Gum Ridge Drainage Dist. *v.* Clark & Parker.

[86 South. 859, No. 21120.]

1. Drains. *Prior to statute commissioners had no power to reassess for additional work not included in estimate.*

   Prior to the enactment of chapter 199, Laws 1912 (Hemingway's Code, section 4290), the commissioners of a drainage district organized under section 1683 et seq., Code 1906 (Hemingway's Code, section 4264 et seq.), who underestimated the extent and cost of the work proposed to be done in the district when apportioning the same among the landowners, and thereafter contracted for the performance of such additional work as they may have deemed necessary to carry out the needs of the district, were without power to reassess the land in the district for the payment of such additional work.

2. Drains. *Commissioners held to have no authority to pay increased cost caused by change in plans after apportionment of cost.*

   The commissioners of drainage districts organized under section 1683 et seq., Code 1906 (Hemingway's Code, section 4264 et seq.), who, after apportioning the estimated cost of the work to be done among the landowners, and entering into a contract for the performance thereof, changed the plans and specifications of the proposed work so as to materially increase the extent and cost thereof for the reason that the work originally proposed to be done would not, in the judgment of the commissioners, meet the requirements of the district, and have agreed to pay the contractors for such additional work, are not authorized by chapter 199, Laws 1912 (Hemingway's Code, section 4290), to reassess the land in the district for the payment thereof.

3. Drains. *Contract for additional work must be made in manner provided by law to authorize reassessment.*

   The contract which chapter 199, Laws 1912 (Hemingway's Code, section 4290), requires drainage commissioners to make for work to be done in the district in addition to that included in the estimate thereof, which was passed on by the landowners when the cost thereof was apportioned among them, in order that the commissioners may be authorized by that statute to reassess the land in the district for the payment of such additional work, must have been made in the manner provided by law.

APPEAL from chancery court of Jefferson county.

HON. R. W. CUTRER, Chancellor.

Suit by Clark & Parker against the Gum Ridge Drainage District. Decree for complainants, and defendant appeals. Reversed, and bill dismissed.

*Truly & Truly,* and *Alonzo C. Heckler,* for appellants.

It must be manifest that to permit additional compensation to be awarded contractors, as was attempted in this case, would place the financial affairs at the individual disposal of the commission. The bald repetition of the facts in this case is sufficient to condemn the claim of the contractors. A complete system of canals and levees is contemplated and is decided on, the engineer employed, plan and specifications prepared, the estimated cost, the consent of the landowners, are all made matters of public record. Betterments and benefits of the landowners apportioned and assessed by the commissioners; the maximum is fixed and bonds issued for the largest amount permitted by the statute the landowners are duly notified and all those matters vital to their financial interest are made matters of public record. After the bonds are duly sold, advertisement is made as required by law, and the work awarded to the lowest bidder. After the contract is awarded and properly executed by all parties, after the contractor enters upon the work, the commissioners, without publicity of any kind, without notice to the private citizen, without the approval of the chancery court, changed the entire system of canals and levees, increased the same according to their own private judgments, and attempted to increase the indebtedness which is to be placed upon the land of their constituents (the private landowners of the district) by more than fifty per cent of the maximum permitted by law. We assert that no such arrangement will be permitted to stand; otherwise it would be possible for a corrupt and designing board of commissioners, or for a corrupt and designing engineer,

to give a favored contractor many advantages by a contract secretly entered into which he could not enjoy if the contract were let after public advertisement as required by law.

The fact that the commissioners ratified the work performed, or that the engineer gave a final certificate showing the amount of work which had been performed, imposed no liability on the district, and certainly none on the landowners who are the "innocent bystanders" in this transaction and who alone bear the brunt of the loss. The powers of the commissioners are prescribed by statute and they cannot by their acts and conduct enlarge those powers. This same question has been before our own and many other courts and to facilitate research by this court we cite and quote from the leading cases.

The case of *Badger* v. *Inlet Drainage District*, 141 Ill., 540, 31 N. E. 70, is exactly like the present case upon the facts and the law applicable thereto. See, also, *People* v. *Scanlan*, 107 N. E. 149, where drainage commissioners in violation of the statute incur indebtedness in advance of the assessment of benefits, the courts hold the contracts illegal. *Winkleman* v. *Moredock and Ivy Landing Drainage Dist.*, 48 N .E. 715, (Illinois) ; *Vandalia Levee & Dr. Dist.* v. *Hutchins*, 84 N. E. 715; *Cherry* v. *Bowman*, 152 S. W. 133 (Arkansas) ; *Heidelberg* v. *St. Francois County*, 12 S. W. 914 (Missouri) ; *Thibault* v. *McHaney*, 117 S. W. 877 (Arkansas).

So far as the bill of complaint in this case relies upon ratification of the void contract and acceptance of the work by the commissioners, it is conclusively shown to be without foundation by the decision of this court in the case of *Jefferson County* v. *Arrighi*, 54 Miss. 668.

Equally without support in the law is the right of complainants in this case to sue upon a *quantum meruit for* work and labor performed. It is well settled that one cannot sue on a special contract and recover upon a *quantum meruit.* We shall, content ourselves with a citation of authorities upon this point. *Yandell* v. *Madison County*,

32 So. 918; *Boyce* v. *Timpe,* 89 N. W. 83; *Hunt* v. *Tuttle,* 101 N. W. 509; *Wade* v. *Nelson,* 95 S. W. 956; *Manning* v. *School District,* 102 N. W. 356; *Davis* v. *Drew,* 111 S. W. 869; *Arlington Hotel Company* v. *Ewing,* 138 S. W. 954.

It is also well settled that a county or other public corporation will not be liable on an implied contract where an express contract is contemplated by statute. 7 Am. & Eng. Encyc. Law (2 Ed.), 946; 11 Cyc., pages 468, 469, 474, 476; *Grotton Bridge & Mfg. Co.* v. *Warren County,* 31 So. 711; *Wollcot* v. *Lawrence County,* 26 Mo. 272; *Michael* v. *City of Atoka,* 185 Pac. 96; *Donovan* v. *Mayor, etc., of New York,* 33 New York, 291; *Gregg* v. *Town of Anchorage,* 216 S. W. 348; *Buchanan Bridge Co.* v. *Campbell,* 54 N. E. 372; *Turney* v. *Town of Bridgeport,* 12 Atl. 520; *Moody* v. *Terrell-Hedges Co.,* 78 So. 639.

Nor is the district estopped by receiving the benefits of the labor, material or improvements. See *Phillips* v. *Butler Co.,* 86 S. W. 231; *Schwinn* v. *Seymour,* 24 N. J. Eq. 143; *Monoghan* v. *Vanatta,* 122 N. W. 610.

First, that chapter 199, Acts of 1912, was prospective in its application and the legislature did not intend to give it retrospective effect. *Leve Commissioners* v. *Royal Insurance Company.* 96 Miss. 832; *Alden* v. *City of New Ark.,* 36 N. J. L. 299; *Whedom* v. *Forham,* 38 Conn. 409; *Dewart* v. *Purdy,* 29 Penn. 113; *Northern Drainage District* v. *Bolivar Co.,* 111 Miss. 250.

Second. That if it be attempted to give chapter 199 a retrospective effect, then it would render the chapter itself unconstitutional because it is beyond the power of the legislature to pass retrospective laws affecting private rights. Third. In the third place, chapter 199 cannot be made to apply to the instant case because of its own requirements.

We submit, therefore, that the demurrer to the bill of complaint should have been sustained.

*Engle & Laub,* for appellee.

In view of the fact that it was admitted and established the appellees were awarded a contract under competitive bidding and after compliance with all legal requirements, and that in pursuance of this contract they did all the work required by the specifications furnished them and their work was accepted by the appellants, the learned chancellor had no alternative but to find in favor of the appellees.

Certainly the appellees are entitled to pay for the work which they did in carrying out the specifications furnished them by the engineer of the drainage board and in accordance with their contract Exhibit A and at the price stated in said contract. We see no escape from this conclusion and in truth there is no escape.

It was not up to appellees to take care of the finances of the drainage board. Appellees had a right to expect the drainage board to be in a position to pay for all the work called for under the specifications and in the contract.

The law imposes no duty or obligation upon the contractor to see that the drainage board can finance its contracts. Good business judgment however might make some assurance on this point advisable but there rests on the contractor no legal obligation to take care of the finances of the drainage board.

As far as the legal rights of appellees to recover payment for their work is concerned the contract Exhibit B was not necessary. By that contract appellees simply undertook to assist appellants in financing the work they had properly, legally and duly let. Certainly apellees cannot be prejudiced in their rights because of the contract exhibit "B."

Whether the appellants had the right to make said contract Exhibit B or not assuredly appellees must be paid for the work done in accordance with their contract and the specifications. The drainage district and the lands therein undoubtedly are liable to appellees for the work done under this contract which as stated, it is admitted, was duly and properly let after compliance with all legal

requirements. This being so, appellants. have no escape from liability on that contract.

Chapter 39 of the Code of 1906, is sufficiently broad to authorize the drainage commissioners to raise additional funds to pay for any work done or contemplated, particularly is this true of section 1715. This section contemplates that the commissioners would issue orders for money and contemplates a situation where the commissioners have work done in excess of the funds on hand.

Under said chapter and said section 1715 it was the duty of the Gum Ridge Drainage Commissioners after they had exhausted the funds on hand to make provision for the payment of appellees. They could make this provision by making a levy for the amount required to pay for the work already done or to perform the contemplated work.

No curative act was needed and no additional contract was needed. The commissioners under the law as it stood and particularly section 1715 could have issued orders to appellees payable to them and could have made a levy to take care of and pay said orders and all of this could have been shown in their report and any landowner would have had this opportunity to object.

Under said chapter 39 the commissioners could have carried out their contract Exhibit B. fully and effectually. But whether or not they could have done this does not preclude appellees from a right to payment for the work done by them and done under a contract which it is admitted was fairly and legally let and the work done in accordance with the specifications furnished them by the drainage commissioners.

In view of the foregoing it may puzzle the court to know why these commissioners did not go ahead and carry out their contract. We submit though that no reflection on or presumption against appellees can be indulged in because the commissioners after their fair words failed to do the fair and just thing. Chaper 199, Laws of 1921, Hemingway's, sections 4290-91. Also, chapter 210 of Acts of 1918.

The validity of said section giving it a retrospective effect as the legislature intended and without which retrospective effect the act would be meaningless is ably discussed in *Gordon* v. *City of San Diego,* 40 A. S. R., pages 72-81.

It was held in the case of *Bassetts* v. *Barbin,* 11 La. Ann. 672, and in *State* v. *Marion County,* 128 Mo. 427, 30 S. W. 103, and 31 S. W. 23, that all taxes imposed to pay a prior indebtedness or based on a prior or changed assessment are not objectionable as being retrospective. 7 Cyc., page 22, and cases there cited. It was further held in the case of *Ritchie* v. *Franklin County,* 22 Wall. (U. S.), 62, 22 L. Ed. 825, that a state statute authorizing county courts to issue bonds for the purpose of paying for the buildings of bridges and macadamized roads heretofore contracted to be built is valid and constitutional.

A curative act is intended to give legal effect to some past act or transaction which is ineffective because of neglect to comply with some requirement of law and statutes curing defects in acts done or authorized to express one's powers which acts retrospectively are valid, provided the legislature originally had authority to confer. the powers or to authorize the acts. *Tillton* v. *Swift,* 40 Iowa, 78; *Thompson* v. *Lee County,* 3 Wall. (U. S.) 327, 18 L. Ed. 177; 8 Cyc. 1023; *Gordon* v. *City of San Diego,* 40 A. S. R. 73-81; *Kittenger* v. *Buffalo Traction Co.,* 160 N. Y. 377, 54 N. E. 1081. See Note 8 Cyc. 1023.

So chapter 199, Laws of 1912, upon examination is plainly seen to be a curative and remedial act and it is incumbent upon the courts to·so construe it and being a remedial act the same must be construed liberally. 25 R. C. L., par. 12, page 765; *Green* v. *Anderson,* 39 Miss. 359; *N. O.* v. *Clarke,* 95 U. S. 644, 24 L. Ed. 521; *People ex rel, Blanding* v. *Burr,* 13 Cal. 343; *Creighton* v. *San Francisco City and County Supervisors,* 42 Cal. 446; *Brewster* v. *Syracuse,* 19 N. Y. 116; *Knapp* v. *Newton,*.v. Hun. (N. Y.) 268; see also, Note, 48 L. R. A. 465, where this subject is treated at length.

So we submit that when the Mississippi legislature pass-
ed the 1912 amendment to the drainage act authorizing
further assessments it was but carrying out a legislative
right which according to the general rule of law supported
by the above cases and many other was not a retroactive
act but was valid and constitutional.   This subject is dis-
cussed in the recent case of *Hancock County* v. *Shaw*
(Miss.), decided May 19, 1919, 81 So. 647.

Upon Quantum Meruit and Quantum Valebat.   Be-
cause it was established at the trial of this case without
dispute that the amount due as claimed by the appellees
was a fair and reasonable charge for the work done and
that on the evidence of commissioners Wood and Jacobs
the appellees became entitled to the balance due on said
work particularly as this work was being done with the
knowledge and consent of all the landowners in the said
Gum Ridge drainage district and because the work and
benefits were accepted by the landowners and commission-
ers of the said drainage district, equity on the above facts
presented in the case should properly decree that the ap-
pellees were entitled to recover from the appellant if for
no other reason than upon *quantum meruit* or upon a
*quantum valebat.*   *Capital Gas Co.* v. *Young,* 109 Cal.
140, 29 L. R. A. 463;   *Concordia* v. *Hagaman* in Kan. App.
35, 41 Pac. 133;   *Lower Kings River Reclamation Dist.*
531 v. *McCullah,* 124 Cal. 175, 56 Pac. 887;   *Allbright* v.
*Chester,* 9 Rich. (S. C.) 399;   28 Cyc., page 654, Note 79;
*Nome* v. *Lang,* 1 Alaska, 593; *Newcomb* v. *Police Jury,* 4
Rob. (La.) 233; and in *Michel* v. *Police Jury,* 3 La. Ann.
123 and in *Michel* v. *Police Jury,* 9 La. Ann. 67;   *Watson*
v. *New Millford,* 72 Conn. 561, Am. State Report, 345, 45
Atl. 167, cited at page 897; Elliot on Contracts, section
608; *Dawson Water Works Co.* v. *Carber,* 95 Ga. 565;
*Portland Lumbering Co.* v. *East Portland,* 18 Oregon 21,
6 L. R. A. 290, and note; 22 R. C. L., page 644, and cases
cited; 1 Abbott, Municipal Corporations, page 578, par.
259, citing *City Council of Montgomery* v. *Montgomery
and W. Plank Road Co.,* 31 Ala. 76; *City of Helena* v.

*Turner,* 36 Ark. 577; *City of St. Louis* v. *Shields,* 62 Mo. 247; *City of New York* v. *Sonneborn,* 113 N. Y. 423; *Town of Bristol* v. *Bristol and Warren Waterworks,* 19 R. I. 413, 32 L. R. A. 740; *Scheussler* v. *Town of Mason* (Tex. Civ. App.), 29 S. W. 42; *Warren* v. *City of New Orleans,* 87 Fed. ——; *Argenti* v. *City of San Francisco,* 16 Cal. 255; Abbott, Municipal Corporations (1905), page 580, paragraph 259; *Rogers* v. *City of Burlington,* 70 U. S., 3 Wall. 654; *Lake Company* v. *Graham,* 130 U. S. 674; Abbott, Municipal Corporations, (1905), paragraph 159 at 581; *Greenville Compress* v. *Planter's Press,* 70 Miss. 669, 13 So. 879; *City of Lincoln* v. *Sun Vapor Street Light Co.* (C. C. A.), 59 Fed. 756; *Lincoln T. Co.* v. *Cambria Iron Co.,* 13 So. 103, U. S. 412; Bank of U. S. Ap. 98. Chapter 199 of the Laws of Mississippi 1912, authorizes the execution of additional contracts for additional work by a drainage board and it is a well-established principle of law that if the legislature possesses the power to authorize the execution of certain contracts by a public corporation it can authorize such a corporation to ratify a contract previously executed by it without such authority. *City of Bridgeport* v. *Housatonic R. Co.,* 15 Conn. 475; *Wizener* v. *City of Des Moines,* 110 Ia. 175, 81 N. W. 476; *Inhabitants of Bridgeport* v. *Inhabitants of Plymouth,* 97 Mass. 382; *Chesapeake N. P. Tell. Co.* v. *City of Baltimore,* 89 Md. 689, 43 Atl. 784; 44 Atl. 1033; *Kunkle* v. *Town of Franklin,* 13 Minn. 127. And such ratification is then equal in legal force to the granting of original authority and relating back to the inception of the transaction validates all acts in connection therewith. *Davies Co.* v. *Dickenson,* 117 U. S. 657; *Hall* v. *City of Indianapolis,* 92 Fed. 467; *Town of Durango* v. *Pennington,* 8 Colo. 257; *Squire* v. *Preston,* 82 Hun (N. Y.) 88; Abbott, Municipal Corporations, par. 281; *Browne* v. *City of Atchison,* 39 Kan. 37.

We submit that a judgment founded on *quantum meruit* or upon the written contract would be equally well founded.

Summary.  We have seen that appellees were awarded a contract duly and properly on competitive bidding by a duly and properly organized drainage district; one organ-ized upon the unanimous petition of the landowners in the district and that the three commissioners Truly, Jacobs and Wood, owned the bulk of the lands in the dis-trict.  That at the time appellants commenced work under this contract which was at a certain unit price they were handed by the engineer of the drainage district plans, specifications and profiles.

That the drainage district previous to this time had issued bonds to the amount of thirty-two thousand dollars and had on hand about twenty-eight thousand dollars. That appellees continued work under their contract known as Exhibit A which as stated was duly and properly let and awarded to them and pursued the work according to the plans and specifications of the engineer.

When appellees had reached a stage in the work that entitled them under their contract Exhibit A to all of the funds, the drainage commissioners had provided the ap-pellees as business men asked where and how the addi-tional money which they would earn under their contract Exhibit A would come from.

The appellees were under no legal duty to help the com-missioners finance said contract but as stated they wished to know how the commissioners would finance that con-tract.  As a result of their negotiations the contract Ex-hibit B was entered into.

Under chapter 39 of the Code of 1906, the commission-ers had the right to issue orders in excess of the funds on hand to pay for any work done or contemplated and a right to make a levy for the amount required to finish pay-ing for the work already done or to perform the contem-plated work.  Section 1715, Code 1906.

Exhibit B was not a new letting of work; it only as-sured appellees how they would be paid for the work done under their contract and contemplated and specified by the engineer in his profile and specifications after the

board of commissioners had exhausted the cash on hand. Appellees then continued work under their contract Exhibit A and finished the work under said contract and according to the plans and specifications of the engineer furnished them. This is the finding of the fact by the chancellor. Section 1710, Code of 1906, provides that the commissioners shall enter into a contract with the successful bidder for the faithful performance of the work according to the plans and specifications, profiles and estimates of the engineer.

This contract is mutually binding on the contractor and on the commissioners. The engineer employed by the commissioners after this contract was completed made his estimates showing that there was due and owing the appellees on April 13, 1910, twenty-three thousand, three hundred twenty-five dollars and three cents.

Thereupon under the estimates of the engineer binding on both appellees and appellant this amount was due the appellees on that date, April 13, 1910. Since that date there has only been paid four thousand, two hundred sixty-one dollars and fifty cents. Therefore under the contract and estimates of the engineer there is owing to appellees nineteen thousand, sixty-three dollars and fifty-three cents with interest from said date, April 13, 1910, at the rate of six per cent. per annum.

This was the estimate of the engineer and this was what the parties contracted for in the contract Exhibit A. The contract Exhibit B was for the benefit of the commissioners and afforded them an opportunity to liquidate their indebtedness by giving certificates running over a period of five years. These certificates they could have issued and shown in their report under section 1715, Code of 1906, and these certificates would have become a lien upon the lands in the district and certainly against the lands and every landholder who did not appeal to the chancery court for protection and against every one who did appeal to the chancery court for protection in the event the court held that the commissioners had acted in a just and

equitable manner. Undoubtedly these certificates would have become a lien immediately upon the land's owner by Jacobs, Truly and Wood who as stated owned nearly all the lands in the district and these commissioners could not object to their own actions.

The record shows that they all consented to this plan of issuing certificates and they cannot now object and the lands then owned by them undoubtedly are liable for the payment of appellees. This is also true of all the lands in the district because the district was organized upon the unanimous petition of all the landowners and no landowner made any objection to the letting of the contract or to the progress or completion of the work and as all the work was done under the contract which appellants admitted was duly, properly and legally made and as appellees only claim the amount of the estimates furnished by the engineer of the board, assuredly there is no escape from the conclusion that the drainage district is liable for the amount of said estimates and all the lands therein liable for the claim of appellees.

The chancellor who tried the case found as a matter of fact that all of the work done by the appellees was done under the contract that was duly and properly entered into with them after competitive bidding and was done in accordance with the plans and specifications of the engineer of the board and at the price at which the contract was let after due advertisement and competitive bidding and that the landowners in the district received the benefit of the work so performed by appellees under their contract and that the amount of said benefit was commensurate with the price the drainage commissioners agreed to pay appellees which was the price of their competitive bid.

These findings of fact by the chancellor are supported by the admission of appellants; supported by the contracts which are in evidence and by the testimony of the witnesses examined. There is not a word of evidence in the case to dispute these findings of fact by the chancellor

and therefore the decree must stand. The decree of the court requires the amount to be paid in cash because the time for the retirement of the certificates of indebtedness mentioned in contract Exhibit B had passed and appellants did not avail themselves of that contract.

If contract Exhibit B is invalid then appellees were entitled to cash on April 13, 1910, when they received their final estimate from Mr. Jenks, the engineer of the drainage board. The decree simply requires appellants to do now what they should have done then. Is it conceivable that any court would do so monstrous a thing as to free the lands owned by these commissioners and the other lands in the drainage district from the lien and claim appellees have for work let to them at competitive bidding, work for which they entered into a legal and binding contract, work which they performed according to the plans and specifications and work for which they ask payment in the amount of the estimates given by the engineer representing the drainage district?

We confidently submit that the decree of the lower court should unhesitatingly be affirmed. We question if a fairer, cleaner case was ever presented to a court of equity?

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a decree awarding the appellees a recovery against the appellant for the sum of twenty-nine thousand, eight hundred nineteen dollers and fifty-three cents, together with certain specific directions relative to the assessment of the land within the drainage district and certain other matters not here material to be set forth in view of the disposition we have decided to make of the cause.

The appellant drainage district was organized in 1910 under section 1683 et seq., Code of 1906 (section 4264 et seq., Hemingway's Code).

After the organization of the district the adoption of plans and specifications for the proposed work, to wit the

building of a levee, the assessment of the benefits to be derived therefrom, and the damages to be sustained thereby by the landowners and the sale of the bonds permitted by the statute for raising the revenue with which to pay for the proposed work, the drainage commissioners advertised for the construction of the levee according to the plans and specifications then on file and awarded the contract to the appellees in accordance with their bid to construct the levee at eighteen cents per cubic yard. After the contract was let and probably before any work thereunder had been begun by the appellees the drainage commissioners decided to increase the size of the levee by about one-half, by widening the top and base and increasing the height thereof throughout its length, and pursuant thereto new specifications were substituted for the old ones with the consent of the appellees, who continued and completed the construction of the levee in accordance therewith. Before the completion of the levee the drainage commissioners entered into a written contract with the appellees in which it was set forth that it would be necessary for the commissioners to raise about seventeen thousand dollars in addition to the fund then available to them for the payment of the amount that would be due the appellees for the construction of the levee, and that the drainage district would issue to the appellees certificates of indebtedness therefor. These certificates of indebtedness were never issued, and we have been refered to no statute in existence when the agreement so to do was made by which they are authorized.

The amount claimed to be due the appellees under this agreement is nineteen thousand, sixty-four dollars and eighty-three cents, with accrued interest thereon. The agreement to increase the size of the levee and to pay the appellees for the additional work necessitated thereby was made without advertisement for bids therefor as provided by section 1710, Code of 1906 (Hemingway's Code, section 4299).

The prayer of the bill is, among other things, for a decree awarding the appellees a recovery of the amount sued for and directing the drainage commissioners to reassess the land in the district for the payment thereof, in accordance with the provisions of chapter 199, Laws of 1912 (Hemingway's Code, section 4290).

Under the statute under which this drainage district was organized the commissioners were without power to reapportion the cost of the levee among the landowners in order to obtain the money with which to pay the cost of the increase made in the size of the levee after the original assessment of the landowners therefor. So that, in order for the appellees to enforce the payment of their claim, a reassessment of the landowners therefor must be authorized by chapter 199, Laws of 1912 (Hemingway's Code, section 4290), enacted about two years after the levee was constructed, which provides that:

"In any case where the commissioners of any drainage district, acting under chapter 39 of the Code, of 1906, may have underestimated the cost or extent of said proposed work and shall have contracted for the performance of such additional work as they may have deemed necessary to carry out the needs of their district, then they shall reassess the several properties in the district for said additional work in proportion to the benefits received, as provided in said chapter for the first assessment," etc.

In order for the appellee's claim to come within this statute the drainage commissioners must have: (1) Underestimated the extent of the proposed work; and (2) have contracted with the appellees for the performance of the additional work necessitated thereby.

First. The work proposed to be done by the drainage commissioners when the estimated cost thereof was apportioned among the landowners, and the contract therefor was let, was to construct a levee in accordance with the plans and specifications then on file, and no underestimate was then made by the commissioners either of the extent or cost thereof, but what occurred, as hereinbefore

set forth, was that the commissioners decided simply to increase the size of the levee about one-half for the reason that in their judgment such a levee would serve the purposes of the district better than the one originally proposed and on the estimated cost of which the landowners had passed.

The statutes under which the district was formed all contemplate that the landowners shall have an opportunity to object to the character, extent, and estimated cost of the work proposed to be done by the drainage commissioners, and, while chapter 199, Laws of 1912 (section 4290, Hemingway's Code), modifies this right to some extent, it does not confer upon the commissioners the right to so change the plans and specifications of the proposed improvements after the estimated cost thereof has been passed on by and apportioned among the landowners so as to materially increase the cost of the work proposed to be done simply because in the judgment of the commissioners such increase therein is necessary in order for the accomplishment of the purposes for which the district was organized.

Second. The contract originally made by the commissioners with the appellees pursuant to the advertisement therefor was for the construction of the levee according to the plans and specifications then on file and the substitution of new plans and specifications for those under which the contract was let was equivalent to the making of a new contract, and section 1710, Code of 1906 (section 4299, Hemingway's Code), requires all contracts to be let to the lowest bidder after publication therefor has been made. It is true that, even had this new contract been entered into pursuant to the provisions of the statute, the drainage commissioners, as heretofore stated, would have been without power to reassess the land in the district in order to obtain the money with which to pay the increased cost of the levee, and that chapter 199, Laws of 1912 (section 4290, Hemingway's Code), was enacted to supply that defect in the commissioners' power;

nevertheless the condition on which the commissioners are invested with the power conferred by the statute is that they shall have contracted for the performance of the additional work, which *ex vi termini* means in the manner provided by law.

The decree of the court below will be reversed, and the bill dismissed.

*Reversed, and bill dismissed.*