WHITE *et al. v.* LAKE CORMORANT DRAINAGE DIST.

[94 South. 235.   No. 22919.]

1. DRAINS. *New assessment of benefits by drainage district author-ized where lands assessed receive additional benefits.*

Where a drainage district is organized under chapter 195, Laws 1912, as amended by chapter 269, Laws 1914 (Hemingway's Code, sections 4434 to 4483, inclusive), and the funds realized from a sale of the bonds of said district prove to be insufficient to complete the improvement planned, which improvement had been begun and abandoned because of such insufficiency of funds, and it appears that by the completion of such improve-ment, the lands of the district will receive additional benefits to those found and assessed in the first assessment of benefits, then under section 7 of said statute (Hemingway's Code, sec-tion 4445) a new assessment of benefits is authorized for the purpose of completing said improvement.

2. DRAINS. *Exclusion of lands in drainage district not benefited by second assessment within jurisdiction of court.*

Where, on the hearing of such new assessment of benefits, it is shown to the court that the lands of certain landowners in the district will not receive any additional benefits on account of such new assessment, and the decree of the court so finds, and releases such lands from such new assessment, and authorizes the withdrawal from the record in the case, the pleadings and proof touching said question, the other landowners of the dis-trict have no ground to complain at such decree, for the court had jurisdiction to render such decree, the proceeding being *in rem* on publication of notice as required by said statute, thereby giving all landowners in the district an opportunity to be pre-sent at the hearing and object to the action of the court com-plained of and have such pleadings and proof made a part of the record for the purposes of appeal.

APPEAL from chancery court of De Soto county.

HON. E. N. THOMAS, Chancellor.

Proceeding to assess lands of the Lake Cormorant Drain-age District. From a decree approving a second assess-ment, W. O. White and other landowners appeal. Af-firmed.

*Burch, Minor & McKay,* for appellant.

The whole case comes down to the question as to whether or not the statutory authority to make a re-assessment when "it becomes absolutely necessary in order to raise funds to preserve and maintain the improvements of the district" can justify a re-assessment for the purpose of completing the drainage project according to its original plans. For, in the face of the statute and of the decree, it seems idle to say that the decree was not final.

There is no secret about the facts that this reassessment is sought for the purpose of completing the district as originally planned. It is not sought for the purpose of maintaining or preserving improvements already made. To state the case in another way: The drainage commissioners have failed to complete the work of the district within the original estimates by fifty per cent. They are asking the right to make a re-assessment to the extent of fifty per cent of the old assessment, for the purpose of completing the work as originally planned. Surely, this cannot be said to present a case of absolute necessity for preserving and maintaining the improvements of the district.

Much of both briefs is devoted to the argument of inconvenience. We shall not dwell on that, for the court has plainly indicated in several cases heretofore that it will not undertake to supply defects in the legislation, but will leave that duty to the legislative department of the Government.

A mild and apologetic effort is made to support the action of the court below in relieving Mrs. Knight, the Richmond heirs and the Barbee estate from the additional assessment.

After all is said, we have a case where the assessment, as originally filed and advertised, must stand, unless the court upon pleadings and proof, sees fit to correct it. Here there is neither pleading nor proof to support the change in assessment. On the contrary, the protests against the

assessment of these particular parties was by the court "dismissed" after all the evidence had been voluntarily withdrawn.

If the protests that were filed had merit and were supported by the evidence, what would any lawyer in Mississippi have done if the chancellor had thought the protests meritorious? He would have had the decree declared that the chancellor found the protests meritorious and sustained by the proof and also had the decree so adjudged, by all means leaving in the record both the protests and the evidence in order that the findings of the chancellor might have support.

In the present instance the protests were withdrawn and then dismissed by the court and all the evidence was withdrawn. This was done at the instigation and on the suggestion of the commissioners themselves and as a condition precedent to the change in the assessment.

It is not only a fair, but an unavoidable deduction, that the protests and the evidence contained matter which the commissioners were exceedingly anxious to suppress.

We respectfully submit that there is no warrant in the statute for this re-assessment. We submit further that the petition of the commissioners for the re-assessment has no inherent merit. Although the estimate was made at a time when prices were high and most of the work was done when prices were lower, the commissioners have not only consumed the amount of the original estimate, but the ten per cent additional (over fifty thousand dollars) fifteen thousand dollars derived as a premium on the sale of the bonds, and still need fifty per cent of the original assessment for the completion of the work. No amount of direct testimony can overcome the deduction that is unavoidable from these figures.

*F. C. Holmes,* for appellee.

Have the commissioners the right to make a new assessment roll of benefits in the state of case provided for by

the statute? The objection urged to this is that the assessment roll heretofore approved stands as a final judgment. We recognize the rule that ordinarily a final judgment is final and cannot be set aside. In other words it is *res adjudicata.* Special attention is called to the language of the statute, specifying that the finding of the court shall have the force and effect of a judgment. In other words the statute undertakes to give to something that is not a judgment the force and effect of a judgment.

It is necessary to consider whether or not the determination of benefits is or is not a judicial adjudication. In other words we contend that it is a delegation of legislative power and not a judicial adjudication. We cite in support of this the case of *Earle Rond Improvement District* v. *Johnson,* appealed from the chancery court of Crittenden county, Arkansas, reported in Southwestern Reporter No. 224, page 965. This case affirmatively holds that the legislature may authorize an improvement district to reassess benefits. *Pacific Railroad Company* v. *Izard County Highway Improvement District,* 220 S. W. 452 (Arkansas.)

In the case of *Missouri Pacific Railroad Company* v. *Izard County Highway Improvement District,* above cited, the district was operating under a road law very similar to the drainage law under which we are now operating. The procedure for assessing benefits was very similar to section 4445 of Hemingway's Code. The language of that road law concluded with the same language of said section of said code to the effect that when the assessment roll had been approved, it should stand as a final assessment of benefits upon the lands of the district and should have all the force and effect of a judgment. The question before the court was whether or not it was a judicial proceeding and subject to be removed to the federal courts under section 28 of the Federal Judicial Code. In that case the court held that assessment for local improvements was not a judicial proceeding; that assessments for local improvements were not a tax; that assessments for local im-

provements were a legislative function, not judicial. *Chicago M. & St. P. Railroad Co.* v. *Mosquito Drainage District* (Iowa), decided December 14, 1920, 180 N. W. 170; *State, by Revenue Collector* v. *Oliver Drainage District,* 208 S. W. 112; *Rosslet* v. *Green & Lawrence Drainage District,* Ark. Sup. Ct. (1918), 207 S. W. 218.

From a consideration of the foregoing authorities, and the principles therein announced, we are irresistibly forced to the conclusion that this whole procedure is legislative and not judicial, except as made so by legislative enactment. *Box* v. *Straight Bayou Drainage District,* 121 Miss. 850.

In the case last above cited the sole question was as to the jurisdiction of Yazoo county chancery court to retain the drainage district cause when no lands were in that county. The court held that for that purpose only, and only in the broad sense of the word was it a pending suit. In our view, the drainage cause is not one suit, but is a succession of transactions legislative or administrative in their nature. We accept the legislative intendment. The decree of the chancellor establishing the district was a final judgment, not appealed from, and is a finality. Yet the statute provides for increasing the territory of the district.

The decree of the chancellor approving the plans and specifications for the district was a final judgment, not appealed from, and is a finality, yet the statute provides for altering the plans. The decree of the chancellor approving and confirming the assessment roll of benefits was a final judgment not appealed from, and is a finality. Yet the statute by necessary implication authorizes the making of a new assessment roll of benefits.

The principle for which we are contending is illustrated by the Acts of 1912, chapter 197. One section of said Act (section 4357, Hemingway's Code), provides with reference to the assessment benefit, "shall order the same to be approved and confirmed and filed, and the same shall stand as the final assessment upon the lands in said District."

Yet another section of said law (section 4380, Hemingway's Code), authorizes the issuance of bonds to complete the work of the district, in the event that the assessment shall be insufficient, and further provides, "and any bonds issued for such purposes shall be issued and assessment made on the lands." As having similar effects with reference also to chapter 196 of the acts of 1912, under which one section (4286, Hemingway's Code), which provides with reference to the original assessment roll as follows: "And the same shall stand as a final assessment upon the lands of said district." Yet by a subsequent section of said law (section 4315, Hemingway's Code) provides for a re-assessment of benefits, and so with similar effects chapter 199, Laws of 1912 (Hemingway's Code, section 4290). See, also, *Gum Ridge Drainage District* v. *Clarke & Parker*, 124 Miss. 382.

Learned counsel for appellant adroitly suggests that the reason why new assessments are authorized under the laws just cited, is because that in those laws no provision is made for an additional ten per cent levy of taxes to take care of unforeseen contingencies; whereas in the Acts of 1912, chapter 195, and amendments, specific provision is made for said ten per cent levy. We respectfully suggest that learned counsel has confused an assessment of benefits, with a levy and assessment of taxes. There might be reason in his contention if there was any provision in the law authorizing the commissioners in their assessment of benefits, to add ten per cent thereto. Neither section 5450 of Hemingway's Code which provides for a special assessment and levy of taxes to cover the estimated cost of the improvement with ten per cent added for unforeseen contingencies, nor sections 4459, 4470 and 4471 of Hemingway's Code, which provided for a special assessment and levy of taxes in an amount sufficient to pay bonds, interest, and ten per cent for unforeseen contingencies (which is the fact in the instant case)—make immediately available any more ready money for construction purposes. In other words we respectfully contend that the ten per cent for

unforeseen contingencies is levied for additional securing the payment of the bonds and interests, and to take care of the levy of taxes upon any lands that may fail of collection. The law-makers could not afford to assume that the owner of every piece of land would pay in full the tax levied against his land and therefore to take care of any defaults the levy is ordered for an amount ten per cent greater than will be actually needed. This is true because the said levy of ten per cent is made and apportioned through all of the years during the life of the bonds.

In the light of the foregoing authorities cited we therefore respectfully and confidently insist that the order of the board of supervisors or the decree of the chancellor confirming an assessment of benefits, being at most a judgment *in rem,* and the exercise of a legislative function, is not inherently a final judgment and therefore possesses the element of finality only by virtue of legislative enactment. And we therefore insist that it is competent for the legislature, either by the same act which authorizes the judgment, or by subsequent act to provide for a readjudication of benefits or for an assessment of additional benefits provided of course there shall not be any impairment of the contract of the purchaser of the bonds or securities of said district. In fact many, if not all, of the statutes which expressly authorize a re-assessment of benefits, recognize this limitation and expressly provide that no reduction shall be made in benefits which will impair the security for the obligations of the district. Such a judgment is not like the law of the Medes and Persians, but is simply an ascertainment or finding (made conclusive by the statute) that the district will receive benefit in the amount and as assessed. Said finding is ineffective and involves no liability whatever against any of the lands of the district until the same is followed up under the provision of the statute by a special levy and assessment of taxes, against and secured by pledge of the benefits or betterments of the district.

It is worthy of comment that in practically all of the drainage laws which have come under our observation the fact is recognized that the costs of the improvements as well as the assessment of benefits, are in the first instance estimates made in advance of the letting of the contract and the construction of the improvements. That in practically all of said laws provision is made for re-assessments. In the case of *Gum Ridge Drainage District* v. *Clarke & Parker,* 124 Miss. 382, the right of the commissioners to make a re-assessment under the law as amended was denied because they did not comply with the plain requirements of the law. In *Simmons* v. *Hopson Bayou Drainage District,* 112 Miss. 200, the commissioners were allowed to make a new assessment of benefits because authorized by the statute.

In the Laws of 1912, chapter 195, as amended by chapter 269 of the Laws of 1914, there is a manifest purpose to make every provision necessary to accomplish the purposes of the law as shown by section 4481, Hemingway's Code, which expressly provides that this act shall be liberally construed to promote the ditching, draining, and reclamation of wet, swampy and overflowed lands. In keeping with this idea special provision is made for the repeated levy of taxes in case the first or other levy shall prove insufficient to complete the improvement. But it is expressly provided that the total levy shall in no case exceed the value of the benefits. See section 4456, Hemingway's Code. It is also provided (section 4468, Hemingway's Code) that taxes may be levied for the purpose of preserving the system of drainage and keeping the ditches clear from obstruction, and of extending, widening or deepening the ditches from time to time, and for doing such other things and acts in order to carry out the purposes of this act and of the drainage system so established, as may be found advantageous to the district. But it is also provided that such levy must be upon the benefits.

The decision of this honorable court in the case of *Clark* v. *Pearman et al.,* 126 Miss. 333, is illustrative of the wis-

dom and necessity of the construction of the statute for which we contend.  The fact that a new assessment roll can be required when necessary in order to raise funds to preserve and maintain the improvements of the district shows the legislative intendment because there is absolutely no authority under the law to levy a tax for the preservation and maintenance of a fully completed district, except against and within the limits of the benefit assessment. This is practically conceded by learned counsel for appellant in the concluding paragraph of his able brief.

"The additional benefits to lands other than those assessed" applies to any or all of the lands which have received the additional benefit.  It may apply to only one tract, to several tracts, or to all of the lands in the district, as is contended in the instant case.  The commissioners were of the opinion that all of the lands of the district were in the same ratio additionally benefited and therefore their new assessment roll embraced all the lands in the district.

In view of the fact that none of the appellants filed any protest or complaint whatsoever against the assessment of their lands under the new assessment roll, we are irresistibly led to the conclusion that they had no real objection to the increase in the assessment of benefits and that their real complaint is against what they are pleased to term "favoritism" shown to three landowners who did file complaint against their respective assessments and this brings us to a consideration of the proposition of diminishing the assessment of three property owners.

. The fact that learned counsel for appellants insist so strenuously upon this alleged error, suggests his lack of full confidence in his argument upon the first error assigned.

In conclusion.  We respectfully insist that, upon the facts disclosed by this record and under the law, the decree of the chancellor confirming the new assessment roll of benefits should be affirmed; that, if any error was committed in diminishing the assessments of the protest-

ants Mrs. C. T. Knight et al., this court will not therefore reverse the whole case, but will affirm and confirm said New Assessment Roll in all other respects.

*Flowers & Brown,* for appellee.

The legislature not only did not limit, but did not intend to limit the power of the commissioners to a single assessment of benefits. Perhaps under the drainage act as originally enacted (chapter 195, Laws 1912, sec. 7), it might have been said that such was the purpose, but as amended by chapter 269 of Laws of 1914, this section (section 7, page 337, Acts of 1914) clearly manifests the intention to authorize the commissioners to make a new assessment. Section 7 as it was originally passed concluded as follows:

". . . and the said board of supervisors shall consider said protest or complaint and enter its findings thereon either confirming such assessment, or increasing, or diminishing the same; and its finding whether protest is filed or not, shall be final and have the force and effect of a judgment from which an appeal may be taken within twenty days to the chancery court or chancellor in vacation; or to the supreme court of the state if the decision be of the chancery court either by the property owner or by the commissioners of the district."

An amendment was added to this section by section 7 of chapter 269 of the Laws of 1914 (page 337, Acts 1914), which after reciting the above concludes: "The assessment roll, so prepared and filed by the commissioners, when approved by the board of supervisors, shall stand as a final assessment of benefits upon the lands of the district and no new assessment roll shall be required unless in the opinion of the commissioners it becomes necessary to raise the assessment of benefits to such lands because of additional benefits to the lands other than those assessed, or because it becomes absolutely necessary in order to raise

funds to preserve or maintain the improvements of the district."

This amendment seems to clearly indicate the intention of the legislature to authorize a reassessment of benefits, or the filing of a new assessment roll in any case where it may in the opinion of the commission, become necessary to do so in order to assess the lands with additional benefits. The case at bar presents a typical case of that sort. No greater necessity for increasing the assessment of benefits could hardly be conceived than that presented by this record. There is no question but that the new assessment reflects a fair and just statement of the actual benefits to be réceived. Unless this new roll can be sustained the object for which the district was organized must fall.

"No new assessment roll shall be required unless in the opinion of the commissioners it becomes necessary to raise the assessment of benefits to such lands because of additional benefits to the lands other than those assessed." Does this not recognize the existence of the right to change the assessment? Is this not an express grant of power to change the roll and to change, alter or modify the judgment or decree confirming it? Take also section 17 of the act as amended (chap. 269, Laws 1914, page 344), where it is provided that the commissioners may alter the plans, etc.; any property owner who may be affected can file his petition to the board, and the commissioners "shall reassess his property, either increasing or diminishing his assessment as they may find just." Here we have another expression in the statute which negatives the argument that the order confirming the original assessment is final and conclusive, and as counsel argues, "forever binding on all parties to it." If the commissioners be of the opinion that there are benefits to the lands other than those already assessed they may reassess the benefits. And if it is necessary in order to raise funds to preserve and maintain the improvement, they may reassess the benefits. And if there is a change in the plans they may reassess the benefits.

How can it then be said that the order approving the
initial assessment is final and conclusive and forever bind-
ing on all parties? What becomes of its finality, its con-
clusiveness and its judicial dignity when it is modified,
altered or changed in any or either of the modes mentioned?
Is there any authority to add to or to take from a final
judgment in any respect after it is entered? With all
these different provisions for changing the assessment roll
after the entry of the order approving it, can lead to but
one conclusion and that is that the legislature did not in-
tend to provide that this interlocutory order of the court,
which is only a step in the procedure for organizing the
district, should be final and conclusive, in the sense that
judgments are usually treated.

The case of *Gum Ridge Drainage District* v. *Clark &
Parker,* 124 Miss. 382, is cited as authority for the prop-
osition that no reassessment may be had. We have care-
fully examined this decision and find nothing in it to sup-
port the position that the commissioners in the instant case
were not authorized to file a new assessment roll. The
authority to create drainage districts rests with the legis-
lature. *Cox* v. *Wallace,* 100 Miss. 525, 56 So. 461; *Yazoo
County* v. *Grable,* 111 Miss. 893, 72 So. 777. The district
is a creature of the legislature, and the legislature can pre-
scribe the terms of its organization. *Northern Drainage
District* v. *Bolivar County,* 111 Miss. 250, 71 So. 380. The
judgment or order approving the assessment is but a step
in the organization and the legislature has seen fit to
authorize a change in this order, consequently it is not
final in the ordinary sense of the term. It is not such a
judgment as is forever binding and conclusive. It is
binding and conclusive only until an occasion arises which
by authority of the statute warrants its change or modifi-
cation.

The provision in chapter 196 of the Laws of 1912, pertain-
ing to a change in the assessment is no broader than that
contained in chapter 195, yet the court in *Simmons* v.
*Drainage District,* 112 Miss. 200, 72 So. 901, held that it

authorized a reassessment, although as it appears, from the opinion, the drainage system had been completed, and the reassessment was made in order to pay for work already done.

Chapter 196 of the Laws of 1912, amending chapter 39 of the Code of 1906, as above shown, contains a provision authorizing a reassessment of the betterments, which it is estimated will result from the proposed drainage scheme, if on account of additional work done or to/be done the benefits will be greater than originally assessed, but the court in *Allen* v. *Hopson Bayou Drainage District,* 106 Miss. 630, 64 So. 418, held that it was proper to make a new assessment because clerical errors had crept into the original assessment. We call the court's attention to the fact that if in that case a narrow and strict construction had been placed on section 1723a of the act the making of a new assessment under the facts shown could not have been justified. The law only authorized the making of a new assessment in cases where on account of additional work done, greater benefits than those originally assessed have been sustained. No additional work was shown to have been done in the Hopson Bayou case.

The amendment to section 7 of chapter 195 of the Laws of 1912 (sec. 7, chap. 269, Laws 1914, page 337), is much broader than the provisions of chapter 196, Laws, 1912 (sec. 1723a). In order to warrant a new assessment under chapter 196 it must appear that the additional benefit results from additional work done or to be done. A strict construction of this law would prevent the filing of a new roll or a change in the original assessment unless there should be some additional work already done or additional work to be done, the result of which will increase the benefits originally assessed. Unless there is additional work there can be no additional assessment. But compare section 7 of chapter 195 under which the new assessment in the instant case was made. It provides that the assessment roll "when approved by the board of supervisors, shall stand as a final assessment of benefits upon the lands of

the district unless in the opinion of the commissioners it becomes necessary to raise the assessment of benefits to such lands because of additional benefits to such lands other than those assessed,—or because it becomes absolutely necessary in order to raise funds to preserve and maintain the improvements of the district. It will be observed that this provision gives to the commissioners the power and authority to raise the assessment of benefits when in their opinion it becomes necessary to do so under two distinct conditions: First—where there are benefits to the lands other than those originally assessed; and second—because it becomes absolutely necessary to do so in order to raise funds to preserve and maintain the improvements of the district. As to the first of these conditions it will be noticed that there must be more actual benefits sustained by the lands than was originally assessed against them. It would appear that this provision was added to the law to meet just such an emergency as is presented in the case at bar.

As to the second reason, the one authorizing the increase in order to raise funds to preserve and maintain the district. Under this provision it clearly appears that the commissioners would be authorized to increase the assessment even beyond the amount of actual benefits sustained. Under the first they are authorized to act if there are additional benefits; under the second they are authorized to act if it becomes necessary to do so in order to raise funds to preserve and maintain the district. After the improvement is completed it may be maintained and preserved, even if it becomes necessary to assess the benefits beyond the amount actually sustained. The whole object of the amendment added to the law by the Act of 1914 was to provide a sure and certain method of completing, preserving and maintaining drainage systems in the state. Any other construction would seem to convict the legislature of doing a vain thing in passing this amendment. The amendment was added to the law for some purpose. There could be no better illustration of its wisdom than its ap-

plication to just such cases as this, when the whole scheme
is about to fail and more than half a million dollars wasted,
simply because of a legal stumbling block; the lack of a
provision to meet the emergency, the absence of authority
for the performance of an act approved and endorsed by
a great majority of the landowners, the doing of which
will save the improvement.

But counsel argues that the amendment does not come
to our aid in this case, because there is no pretense that
there are additional benefits to other lands. And with this
he dismisses the real reason for the new assessment and
confines his argument to a discussion of the meaning of
preservation and maintenance. His superficial treatment
of this one vital question can lead to but one logical con-
clusion and that is that he could find no answer to it.

*Dinkins, Wilroy & Barber,* for appellee.

The consent judgment exempting the lands of Mrs.
Knight et al., from the assessment appealed from is at-
tacked on the ground either that the chancellor was not
authorized to render it or that it shows such favoritism
as amounts to a fraud, and this court is asked to reverse
it, or to annul the exemption and to hold the exempted
lands subject to the assessment upon the same conditions
as the lands of appellants, but this without reference to
or citation of a single fact tending to show that the lands
were subject to assessment or will receive the same meas-
ure of benefits as the lands of appellants. In fact there is
nothing in the record nor any reason suggested by coun-
sel why the lands should be assessed for benefits except
that appellant's lands were so assessed and that there-
fore the lands of Mrs. Knight et al. should not escape.

Appellant's contention cannot be sustained upon any
theory other than a fraud was practiced upon the court
below and that it was acquiesced in by the chancellor as
it is made clear by the decree that the chancellor was "fully
advised," and that after hearing proof, he adopted the sug-

gestion of the commissioners and diminished the assessment according to the agreement of the parties.

Counsel for appellants assume that the chancellor was without authority to change or modify the assessment except upon protests duly filed, and that without protests being presented, or upon withdrawal after presentment, the chancellor would be without authority either to increase or diminish the assessment as shown by the rolls as presented to him.

Section 7, chapter 195, Laws 1912, section 4445 Hemingway Code), prescribes the manner of making the assessment, the notice to be published by the clerk when the same is filed by him, and for the filing of protests against the same by landowners, but the assessment does not become final until it is approved by the court and the court's right to increase or diminish the assessment is not confined to anything that may be presented or suggested by landowners in written protests as it is distinctly declared "and its finding, whether protest is filed or not, shall be final and have the force and effect of a judgment."

Counsel for appellant will not contend that the chancellor when an assessment roll is presented to him, is bound to accept or approve it or that he is without authority to increase or diminish any assessment, all or a part of the assessment, as in his judgment should be increased or diminished, nor that he is required to preserve a record of such proof as he may hear, or assign any reason for his actions. The fact that he increases or diminishes an assessment is sufficient to suggest that he had a sound reason therefor and that his action is just, fair and equitable, and cannot be disturbed or reversed except in cases where it appears to have been upon proof which was preserved and which this court, upon review, should certify was insufficient to support his finding.

There is not an item of proof in this record to indicate either that the chancellor was imposed upon, or that his finding was not justified. The facts were heard, the agreement was considered by him and he certified his approval

of it, and can this court say that it should not have been approved when there is nothing in the record tending to advise upon what evidence or by what considerations the chancellor was influenced?

ANDERSON, J., delivered the opinion of the court.

This is an appeal by W. O. White and thirteen others, landowners in the Lake Cormorant drainage district, from a decree of the chancery court of De Soto county approving a second assessment of benefits to the lands constituting said district. Appellants E. T. Woolfolk, Mrs. C. T. Knight, J. W. Barbee, Sr., and the D. S. Richmond heirs protested against said new assessment. There was a hearing by the court and decree rendered approving the assessment except as to Mrs. C. T. Knight, J. W. Barbee, Sr., and the heirs of D. S. Richmond, whose assessments were left as they stood on the first assessment roll. Thereupon appellants Woolfolk and thirteen other landowners of said district, who were not present at the hearing, prosecuted this appeal from said decree.

The Lake Cormorant drainage district is situated in De Soto and Tunica counties. It was organized under chapter 195, Laws of 1912, as amended by chapter 269, Laws of 1914 (Hemingway's Code, sections 4434 to 4483, inclusive). There are two questions involved. One is whether the court erred in holding that the statute under which said drainage district was organized authorizes a second assessment of benefits; the other, whether the court erred in releasing from such assessment of benefits certain landowners of the district. We will consider them in the order stated. This court, having before it chapter 199, Laws of 1912 (Hemingway's Code, section 4290), held in *Gum Creek District* v. *Clark*, 124 Miss. 382, 86 So. 859, that, in the absence of specific statutory authority, there could be no reassessment of benefits by a drainage district. Does the statute under which this district was organized give specific authority for a new assessment of benefits? Section 7 of

the statute (Hemingway's Code, section 4445) provides among other things:

"The assessment roll, so prepared and filed by the commissioners, when approved by the board of supervisors, shall stand as a final assessment of benefits upon the lands of the said district and no new assessment roll shall be required unless in the opinion of the commissioners it becomes necessary to raise the assessment of benefits to such lands because of additional benefits to the lands other than those assessed, or because it becomes absolutely necessary in order to raise funds to preserve and maintain the improvements of the district."

It will be noted from the statute that there can be no new assessments of benefits unless it becomes necessary to raise the assessment because of additional benefits to the lands other than those assessed in the first assessment, or because it becomes absolutely necessary in order to preserve improvements already made in the district. In considering this question section 33 of the act (Hemingway's Code, section 4481), should be borne in mind. This section provides among other things that the act shall be liberally construed to promote the ditching, drainage, and reclamation of swampy and overflowed lands.

The proceeds of the bonds sold to pay the expense of the work planned under the first assessment of benefits were exhausted before the work was completed. It was found by the commissioners that it would take something like one hundred fifty thousand dollars more to complete the project. Under the holding of this court in *Clark* v. *Pearman,* 126 Miss. 327, 88 So. 716, the required additional bonds could not be issued and sold without a new assessment of benefits. The commissioners made a new assessment of benefits, making a horizontal raise of fifty per cent. of the first assessment of the land of the district; and the commissioners filed a petition setting out that a new assessment was necessary to raise funds to complete the proposed improvements, and that by reason of such improvement, when completed, the lands of the district would

receive additional and other benefits to those found by the first assessment; and furthermore, that it was necestary to complete the work planned and commenced in order to preserve and maintain the improvements already made.

All the landowners of the district, including the appellants, were given notice as provided by the statute of the time and place of hearing before the court of the new assessment. The evidence tended to establish the allegations of the petition. Witnesses testified that the completion of the work planned would result in other and additional benefits to the lands of the district than those found in the first assessment; that in fact the added value was as much or more than the increase shown by the new assessment. There was some testimony to the effect that if the improvement planned was left incomplete the benefits of the work already done would be destroyed.

We deem it unnecessary to consider the question whether the decree of the court can be justified on the ground that the new assessment was authorized by the statute for the purpose of preserving and maintaining the improvements already made. In our opinion under the evidence the decree of the court was authorized by that clause of the statute which authorizes a new assessment of benefits where there are additional benefits to the land other than those ascertained and found in the first assessment. The court in its decree in this case found, and it was justified in so finding by the evidence, that the lands in this district would receive, by the completion of the improvements planned, at least fifty per cent. more than the benefits considered and assessed in the first assessment. The case made for a new assessment here comes not only within the spirit of section 7 of the act, but within its letter. We therefore find no error in the decree of the court in that respect.

The other question is whether or not the court erred in its decree approving the new assessment of benefits in that by such decree the benefits assessed against the lands of Mrs. Knight, Barbee, and Richmond heirs were reduced

to the amounts at which they stood in the first assessment. Separate protests were filed on behalf of each of these parties against the new assessment. After hearing the evidence touching their protests the court rendered the decree appealed from. In this decree there are the following provisions with reference to these protests.

"Thereupon came Messrs. Dinkins, Wilroy & Barbee, solicitors of record for each and all of the protestants above named, and in open court agreed for and on behalf of all of said protestants that in consideration of diminishing their said assessment as hereinafter stated, that they would dismiss all of said protests, withdraw all evidence offered by them and accept said reduction in said assessment in full settlement and extinguishment of all claims for damage against the district on all accounts whatsoever growing out of lands taken and damage to other lands. And the chancellor being fully advised in the premises and having heard proof does hereby adopt the suggestion of said commissioners and said assessments are diminished as hereinafter set forth and upon the condition hereinbefore named and agreed to by all parties. And said protests are dismissed and said evidence withdrawn, it appearing to the chancellor from the proof that there is merit in the protest, and that it is equitable and right that said reduction should be made in their assessments."

It is argued that the decree in this respect was erroneous; that the court had no authority to enter such a decree without pleadings and proof. The new assessment, as was the first, was a proceeding *in rem.* Although appellants, except Woolfolk, were not present at the hearing either in person or by counsel, publication of notice to all landowners of the district had been made as required by the statute informing them of the new assessment, and the time and place of its hearing before the court. This was due process. The court thereby acquired jurisdiction to render the decree which was rendered. The drainage commissioners were present represented by counsel and consented to the decree which was entered, believing it to be

just to those whose lands were released from the new as-
sessment as well as to all the other landowners of the dis-
trict.   The commissioners in a sense occupied a relation of
trust toward the landowners of the district.   They had no
interest except to see that justice was done to each and all
of them.   However, the decree was made on pleadings and
proof.

It is true that after the hearing the court permitted the
pleadings and proof to be withdrawn from the record, but
appellants are not in a position to complain at that action
of the court, for they had an opportunity to be present.
They knew that under the law the court on the hearing had
authority, if the evidence justified it, to make changes in
the assessments, to increase or decrease such assessments,
or release lands entirely therefrom.   Appellants had the
right, if present in court, to object to the pleadings and
proof being withdrawn, and on such objection being over-
ruled, assign such action as error on appeal.   They had the
right on proper application to the court to have the plead-
ings and proof so withdrawn made a part of the record in
the cause for the purposes of appeal.   Having failed to do
this, in our judgment they have no right to complain at
the action of the court in that respect.   The consent fea-
ture of this decree with reference to the parties whose lands
were released from the new assessment can be entirely
eliminated and still there is left a decree reciting that,
after hearing the evidence, the court found there was merit
in the protest of these parties and it was just and equitable
that their assessments should be reduced to the amounts
at which they stood in the first assessment.   Appellants
have had their day in court on this question which they
failed to take advantage of.   We are therefore of the opin-
ion that the court committed no error in this respect.

*Affirmed.*