GILLIS *et al. v.* INDIAN CREEK DRAINAGE DIST.

(Division B. Oct. 28, 1929. Suggestion of Error Overruled Nov. 25, 1929.)

[124 So. 262. No. 28081.]

Boone & Lowry, of Marks, for appellants.

**Herbert Holmes**, of Senatobia, and **Herbert M. Fant**, of Sardis, for appellee.

Argued orally by **M. P. Lowry**, for appellant, and by Herbert Holmes, for appellee.

Ethridge, P. J., delivered the opinion of the court.

The Indian Creek drainage district was created in the year 1916 under chapter 195, Laws of 1912, as amended by chapter 269, Laws of 1914. The assessment was then duly made of the benefits and damages accruing to the property situated within the district. It was found after the creation of the district that some of the drains became filled and obstructed with silt and sands from streams flowing out of the hills and were obstructed by willows, etc. Deeming it necessary to make an additional assessment on some of the property in the district to maintain and repair the drainage canals originally laid out, the commissioners of the district proceeded to give notice of hearing to assess benefits against certain of the property owners within the district, but not against all of them.

The case is presented here under an agreed statement of facts for the purpose of abridging the record as follows:

"1.   That the appellants each own and are assessed upon the additional assessment roll of the said Indian Creek drainage district No. 1 with certain property in the town of Sledge in Quitman county, Mississippi, and that such property owned by the said appellants was included within the boundaries of the original Indian Creek drainage district No. 1 when the said district was established.

"2.   That the property owned by the appellants was not assessed upon the original assessment roll of the said drainage district with any benefits, or betterments, and that the only assessment of benefits and betterments against said property is shown upon the assessment roll filed by the commissioners of the said district on the 28th day of December, 1928.

"3.   That neither of the appellants herein appeared, or filed a protest to the assessment made upon the said

roll at the vacation hearing had in the chancery court of the First court district of Panola county, Mississippi, on the 21st day of February, 1929, the chancellor having found that legal notice was published requiring all interested, parties to appear on said date.

"4. That upon the original assessment roll of the said Indian Creek drainage district No. 1, of all the property within the corporate limits of the said town of Sledge was included within the boundaries of the said Indian Creek drainage district No. 1, the said town of Sledge being wholly situated in section thirty-five (S-35), township seven (T-7), range ten (R-10) West, Quitman county, Mississippi.

"5. That the assessment roll filed by the commissioners of the said district on December the 28th, 1928, showing an assessment of benefits upon the property in the town of Sledge is the only assessment roll of the said district describing the lands within the town of Sledge, and the additions thereto by Lots or Block numbers or by additions or subdivisions.

"6. That the said Indian Creek drainage district No. 1 includes approximately forty-three thousand (43000) acres, and that the only additional assessment made by the commissioners of the said districts since the approval of the original assessment roll was made by the said commissioners upon only those certain lands in the said district shown and described in the notice of additional assessment published by J. A. Carter, Chancery Clerk, and dated the 28th day of January, 1929, and that no additional assessment was made, or attempted to be made by the said commissioners upon any other lands within the said district except as described in said notice.

"7. That for the purpose of this appeal the chancery clerk, in making up his record, may copy and include in such record only that part of the original assessment roll of said district, and of the additional assessment roll

filed on December the 28th, 1928, as may show assessment of benefits against lands within the town of Sledge owned by and assessed to the appellants herein.

"8. It is further agreed in this matter that at a hearing on February the 21st, 1929, before the Chancellor, proof was introduced by the commissioners of the said district establishing the fact, and that it was the opinion of the commissioners, that it was now necessary to raise the assessment of benefits because that the lands so reassessed were not now paying anything for the benefits they were receiving and because such lands were receiving additional benefits other than heretofore assessed and proof was also introduced showing that it becomes absolutely necessary that the property so re-assessed, be so assessed, in order to raise funds to preserve and maintain the improvements of the district. That the property in the town of Sledge and Falcon would be materially benefited by the preservation and maintenance of the improvements already constructed. That the original assessment of benefits on all the lands of the district has been exhausted and that no additional levy of benefits could be made upon the old assessment. That because of the location of the towns of Sledge and Falcon that they were receiving and would receive additional and further benefits by the preservation and maintenance of the work already done."

The question then for determination is whether, under section 7 of chapter 269, Laws of 1914, the assessment can be made alone on particular property which has received benefits, or benefits greater than was estimated, and whether such assessments can be made in incorporated municipalities. In the creation of the drainage district under section 7 (1912) as amended by Laws 1914, chapter 269, it is provided that the commissioners shall proceed to assess the land within the district and shall inscribe in a book the description of each tract of land,

the benefit to accrue to each tract by reason of such improvement, and shall enter such assessment with benefits opposite the description, together with an estimate of what the landowner will probably have to pay on such assessment for the first year. The assessment shall embrace not only the land, but all railroad and other improvements on lands which will be benefited by the drainage system. The section is rather elaborate and prescribes the duties and proceedings of the drainage district commissioners in order to make the assessment complete, and give notice, etc., and after making the assessments, for giving notice and having a hearing in which they can either confirm, modify, increase, or diminish the assessment as made, so as to equalize it fairly to all property owners within the district. It is then provided: "and the said board of supervisors shall consider said protest or complaint and enter its findings thereon, either confirming such assessment, or increasing, or diminishing the same; and its finding, whether protest is filed or not shall be final and have the force and effect of a judgment from which an appeal may be taken within twenty days to the chancery court or chancellor in vacation; or to the supreme court of the state if the decision be of the chancery court, either by the property owner or by the commissioners of the district."

By this provision it is provided clearly that the assessment then made, if not appealed from and modified on appeal, becomes final to the same extent that a judgment subject only to the following provision in the statute does: "The assessment roll, so prepared and filed by the commissioners, when approved by the board of supervisors, shall stand as a final assessment of benefits upon the lands of the said district and no new assessment roll shall be required unless in the opinion of the commissioners it becomes necessary to raise the assessment of benefits to such lands because of additional benefits to

the lands other than those assessed, or because it becomes absolutely necessary in order to raise funds to preserve and maintain the improvements of the district.''

As shown in the preceding part of the section, quoted above, it is the duty of the commissioners to assess the lands within the district and to determine what benefits accrue to each landowner, or tract of land, by reason of the assessment then made. In the last part of the statute quoted from last it appears to give the commissioners power to assess lands that are benefited that have not been assessed. It could not be clearly forseen just what lands might be benefited, and the original creation of the district might not include all of the lands actually benefited, and such benefit appeared afterwards.

We think it was the purpose of the statute to give the board of drainage commissioners power to make assessments against such land, and properly give notice, and thereby subsequently include it in the district. The lands here attempted to be assessed already lay within the district, and had been assessed in the original creation of the district. In other words, the commissioners then estimated what benefits would accrue to the land from the proposed improvement, and the assessment became a judgment binding all of the land for the benefits assessed against it. It was not the purpose of the statute to give the commissioners power at any time they saw proper to go in and readjust and disturb the assessment or benefits once made. It was the intention of the legislature to give them the right to increase the limits of the district by assessing in appropriate proceedings lands benefited which were not included in the former assessment. The last part of section 7, above quoted, recognizes that the estimation of benefits and maintaining and creating the district might vary, and that the estimations originally made in the assessment might prove inadequate, as it did do in the present case, on account of

the silt and other obstructions being greater than anticipated, and that in such case it would be proper to provide an additional assessment against property in the district; and it is apparently under this branch of the statute that the court below acted, but the commissioners conceived, and the court below held, that they had the power to pick out specially designated lands lying in municipalities, and railroad tracks, and a few other bodies of land and make the necessary additional assessment and not against other property receiving benefits. It is true that after developments show frequently mistakes in original estimations, and we think that when the second assessment becomes necessary, under the latter clause of the statute, the board has power to redetermine the benefits to be derived from the new work and to reapportion the amounts on the property owners of the district, but it does not have the right, under this section anywhere, to pick out certain particular tracts and assess them for the benefits accruing to it, and leave unassessed benefits to other tracts within the district. The purpose of the statute taken as a whole is to secure equal and just rights to all the property owners of the district.

We think the act contemplates that property in municipalities situated within the district is subject to assessment for benefits like any other property, and that the law of the Special Session of 1928, chapter 97, is unnecessary and apparently not applicable, because that act provides that a drainage district with an acreage not exceeding six hundred acres may be organized under provisions of chapter 195, Laws of 1912. It apparently had in view the creation of small drainage districts for the benefit of municipalities or thickly populated territory. However, we are of the opinion that the drainage commissioners already had the power to assess property within a municipality if the municipal-

ity lay within the drainage district, and that there is no prohibition upon this power of the legislature so far as we are advised. The fact that municipalities have power over health and quarantine, usually granted by statute, does not deprive the legislature of the power to confer a jurisdiction in other bodies to further those objects. In fact, the state has created a state board of health which has jurisdiction over municipalities as well as other territory in the state.

It follows from what we have said that the court below was in error in assessing the appellants with the benefits in this proceeding, had such proceeding not applied to all the lands within the drainage district, and the judgment must be reversed and the cause remanded.

Reversed and remanded.