SIMMONS v. HOPSON'S BAYOU DRAINAGE DISTRICT.

[72 South. 901.]

1. CONSTITUTIONAL LAW. *Drains. Assessment. Notice. Due process of law. Assessments. Confirmation. Venue. Power of Drainage commissioners.*

Under section 1700, Code 1906, as amended by Laws 1912, chapter 196, section 4, providing that, when drainage commissioners have completed their assessment, they shall file it with the clerk of the chancery court, and that the clerk shall publish a notice at least once a week for two successive weeks of the time set for hearing objections to assessments before the chancellor which time shall not be less than fifteen days or more than thirty days from the time of filing; such a notice is reasonable and valid.

2. SAME.

Under said act the chancellor had jurisdiction to hear the cause in any county of his chancery court district, inasmuch as the act provides that he may hear the cause in vacation, and does not provide expressly that such petition shall be heard in the county where the land is located.

3. SAME.

Act 1912, chapter 196, section 1698, expressly provides that the commissioners of a drainage district may make a new assessment of the benefits to be derived by each separate tract of land, and raise revenue therefrom according to the provisions of the law.

APPEAL from the chancery court of Coahoma county. HON. JOE MAY, Chancellor.

Petition by Hopson Bayou drainage district for the confirmation of their assessment upon lands of the district. From a decree approving and confirming the acts of the commissioners, A. J. Simmons appeals.

The facts are fully stated in the opinion of the court.

*D. W. Cutrer,* for appellant.

This appellant insists that the notice of this hearing by the publication of notice for fifteen days is not suf-

ficient to put him on notice. It is, after all, a question of reasonableness, and two publications in a newspaper for two consecutive weeks is not sufficient to apprise the landowners that their assessments will be increased, and an added burden of taxation placed upon them.

The record shows that appellant's assessments of benefits have been practically doubled. While the total of bonds issued against the assessments of benefits are less than the amount of these benefits, still an opportunity of oppressive taxation is placed in the hands of the county drainage commission. At the pleasure of the commission, tax assessments for drainage purposes, may be increased to the point where they amount to confiscation.

The chancellor had no jurisdiction at this hearing. He set the hearing at Sumner, in Tallahatchie county, Mississippi instead of in Coahoma county, where this district lies. There is no authority of law for setting such a hearing in another county. In effect, this hearing is a suit and appellant is entitled to be heard in the county of his residence. Code, section 707; *Adams v. Kyzer,* 61 Miss. 407.

We call attention to the fact that the first set of commissioners made an assessment roll of this district; that the present commissioners alleged that there were mistakes and misdescriptions in the old roll, and they prepared a new one correcting the said mistakes and misdescriptions. How can they now come into court and say that the first set of Commissioners confused, "Amount of Benefits" with "Estimated Cost of Work," and find that the actual benefits to the lands of the Hopson's Bayou Drainage District through the construction of these drainage canals was much greater than as shown by these two assessment rolls? Why did not these Commissioners ascertain that fact when in 1912, they made the corrected roll?

It is respectfully submitted that these commissioners are now estopped from alleging that the assessment of

benefits on appellant's lands should now be increased, even in the face of the chancellor's ruling on the question of fact. To do so is to impeach their own classification. *People* v. *Green,* 90 N. E. 248, 242 Ill. 455.

The action of the commissioners in using the funds on hand to repair the damaged main canal was clearly illegal. Commissioners cannot undertake work in excess of the assessments of benefits on the lands of the district. *Badger* v. *Drainage District,* 31 N. E. 170. We respectfully submit that the ruling of the chancellor should be reversed.

*Chas. W. Clark,* for appellee.

Appellant contends that the notice of this hearing, by publication for two successive weeks in a local newspaper was, as to him, insufficient notice. He states that this is a question of reasonableness, and he impliedly argues that this court should hold that such notice is insufficient to give the chancellor jurisdiction.

It is difficult to understand what this contention is based on. The first publication of notice was made on April 13th, the second on April 20th, and the hearing was had on the 28th. Applying the rule laid down by section 1606 of the Code, excluding the 13th and including the 28th, we have fifteen full days. This fills the statutory requirement to the very letter. (Laws 1912, chapter 196, section 1700, page 228.)

If appellant means that fifteen days is not sufficient time, the short answer is, that it is the time fixed by the legislature.

It is argued by appellant that his assessment of benefits have been practically doubled, and that this law places an instrument of excessive taxation in the hands of drainage commissioners, and that they may use it to oppress him.

But the actions of the commissioners must be confirmed by the chancellor after a hearing, and even the

actions of the chancellor after a hearing, are subject to review by this court. Thus the appellant's constitutional rights are pretty well safe-guarded.

The allegation that the chancellor had no jurisdiction, because he set this hearing before himself at Sumner, Tallahatchie county, Mississippi, instead of in Coahoma county, is unsound.

To begin with, the hearing was in vacation, and it is well settled in this state, that where the chancellor has power to do any act "in vacation," that means anywhere in his court district that the chancellor may designate. Surely, if *habeas corpus* proceedings may be held by the chancellor anywhere in his district, matters *in rem* can be.

If it be argued that the "spirit" of this law be, that drainage hearings should be held in the county where the district is situate, it is a sufficient answer to state that the legislature did not say so. If the chancellor, who is generally pretty closely in touch with drainage districts, had any reason to apprehend contests, he would set the hearing in the county where the land is situate. If any landowner should telephone to the chancellor that there would be a contest and that numerous objectors desired to be heard, it is only reasonable to suppose that the chancellor would be glad to enter his order, re-setting the hearing at the court house of the county where the district lies, or at any place in the court district which would be most convenient to the objectors.

Section 707 of the Code has no application, for this is not a "suit." Even if it were, some landowner might contend that the "suit" was properly brought in Tallahatchie county, because he himself lived there.

Appellant raises the point that when the present drainage commissioners went on the lands of this drainage district, on October 4, 1912, and made a revised and corrected assessment roll, correcting the faulty descriptions of the first roll made by the old

commissioners, that no other or further rolls could be made; and that these present commissioners were now estopped to say that the old commissioners had made the mistake of supposing that "amount of benefits" meant, not the actual benefits to be derived from installing a drainage system, but the estimated cost of the work.

Here appellant completely misunderstands the purpose of the present drainage commissioners in making the corrected roll of date October 4, 1912. The commissioners were following chapter 202, Laws 1912, which provided a method of issuing the bonds of the drainage district for that part of the twenty per cent cash assessment which had not been paid in cash by the landowners. They followed the law strictly, and did what the law required. The fact that they assessed the lands in forty-acre blocks, instead of sections and half-sections, was due to the fact that many of the sections which had been assessed as a whole, had been cut up into smaller tracts, and the landowners did not know how to apportion the taxes among themselves. It fortunately happened that the old commissioners had assessed these lands in forty-acre blocks, but had lumped the assessments when they transcribed the assessment roll. All this data was before the chancellor, and he confirmed the action of the present commissioners in making these very meritorious corrections. The fact that only one landowner objected, clearly shows that the new arrangement gave satisfaction to the other landowners. The old roll, as can readily be seen, was capable of creating endless confusion. For instance, if section 1 were assessed at nine hundred and forty-three dollars and twenty-five cents, what proportion of that assessment must each of the half a dozen subsequent purchasers bear, when taxpaying time came? One tract of land might be bounded by the ditch; another might lie a mile distant. As for the tax collector, it is easy to imagine his troubles. The commissioners and

chancellor put an end to this confusion, by recasting the roll in its original form. The supreme court affirmed their findings. *Allen* v. *Drainage District,* 64 So. 418 Evidently, then, these commissioners, when they corrected the old roll, were simply putting the same exactly in the form it was in when the old commissioners first made it. Since they were strictly following a procedure laid down by statute for floating the bonds for the district for the remaining part of the assessment levied by the old commissioners, they were not called upon to inject into their procedure a series of experiments. One statute (chapter 202, Laws of 1912) prescribed how the commissioners might issue the bonds of the district for the balance due, instead of forcing the landowners to pay cash. Another statute (chapter 196, Laws of 1912) prescribed how, when the first assessment of benefits proved insufficient, another might be levied. Thus the two laws had nothing to do with each other, and the commissioners wisely refrained from embarking upon a double-barrelled procedure which involved the experiment of combining the two laws. Had they done so, there is no telling where they would have landed.

The case of *People* v. *Green,* 90 N. E. 248, does not sustain his contention. In that case, the landowner appealed from certain assessments on the ground that they were too high. A jury trial was had, and the jury raised certain of the assessments, and lowered others. The court held that when a landowner took an appeal on the ground that the assessments were too high, the assessments must either be lowered, or confirmed; that there was no authority to raise them still higher. The only remarks made by the court which even sighted in the direction of appellant's contention, were as follows:

"It manifestly would be unfair to the landowners who had filed objections to the classification on the ground his land was classified too high, after he had

appealed from the decision of the commissioners to the county court, to force him into a trial in that court, upon the question that his lands had been classified too low without any objection having been filed before the commissioners raising that question, and the drainage commissioners raising, on the appeal of a landowner, ought not to be permitted to stultify themselves and impeach their own classification by proving their classification was too low.''

As will be seen, the remark of the court was merely *obiter.* It is a very slender reed for appellant to lean on.

HOLDEN, J., delivered the opinion of the court.

On April 12, 1916, the drainage commissioners of the Hopson's Bayou drainage district in Coahoma county made a new assessment upon the lands of the drainage district, under chapter 196, sections 1698 and 1700, Acts of 1912, and ordered the issuance of additional bonds of the drainage district in the sum of twenty-eight thousand three hundred and thirty-six dollars and fifty cents for new drainage work necessaery in cleaning, enlarging, and repairing the drainage system of the district, and in paying a balance due for work already done thereon. The commissioners then filed their petition with the chancery clerk of the county, praying that their actions in the premises be approved and confirmed by the court according to chapter 196, Acts of 1912; and the clerk proceeded to publish notice, once a week for two successive weeks, of the time set for the hearing of the cause, which time was not less than fifteen days nor more than thirty days from the date of filing the same, and the petition was heard by the chancellor in vacation, according to the notice, at Sumner, in Tallahatchie county, and not in Coahoma county where the land is situated. On the hearing the chancellor approved and confirmed the acts of the commissioners; and from this decree the appellant, A. J. Sim-

mons, one of the landowners in the Hopson's Bayou drainage district, appeals here, assigning three errors· viz.: First, that the notice of the hearing by publication for fifteen days is insufficient notice, unreasonable, and invalidates the act by denying due process of law; second, that the chancellor had no jurisdiction to hear the cause in Tallahatchie county, it being one of the counties of his chancery court district, but not the county in which the land is situated; third, that the commissioners in office in 1916 were different from those in office in 1911, when a prior assessment had been made, and that the new commissioners could not subsequently assess the land anew for the purpose of raising additional revenue to be used in repairing and maintaining the drainage district.

We hold:

First. That the publication of notice, for at least once a week for two successive weeks, of the time set for hearing objections to the assessments before the chancellor, which time was not less than fifteen days, nor more than thirty days, from the date of filing same, is a reasonable and valid notice as provided by the Legislature in section 1700, chapter 196, Acts of 1912.

Second. That the chancellor had jurisdiction to hear the cause in Tallahatchie county or any other county of his chancery court district, inasmuch as the act provided that he may hear the cause in vacation, and does not provide expressly that such petition shall be heard in the county where the land is located. *United States Fidelity Co.* v. *State,* 69 So. 1007; *Hiller* v. *Cotton,* 54 Miss. 551; *Adams* v. *Kyzer,* 61 Miss. 407. If this rule works a hardship upon the taxpaying landowner in such cases, the remedy lies with the legislature.

As to the third assignment of error, we see no merit in it whatever, as the act itself (section 1698, chapter 196, Acts of 1912) expressly provides that the commissioners may do exactly what they did do—make the

new assessment of the benefits to be derived by each separate tract of land and raise revenue therefrom according to the provisions of the law.

The decree of the lower court is correct, and is affirmed.

*Affirmed.*