BUCHANAN *v.* RED BANKS CREEK DRAINAGE DISTRICT.

In Banc. Mar. 14, 1949.

(39 So. (2d) 321)

Lester G. Fant, Jr., for appellant.

740

L. A. Smith, Jr. and McClure & Fant, for appellee.

750

Alexander, J.

This is an appeal from a decree overruling appellant's protest against an assessment by the appellee of lands of the former in order to effect the sale of bonds of the district in the sum of $25,000 for maintenance and repairs alleged to be "absolutely necessary to preserve and maintain the drainage system of the district."

This district was organized June 21, 1926, under Chapter 195, Laws of 1912, and Chapter 269, Laws of 1914, Code 1942, Section 4674 et seq. Thereupon, a canal eleven miles in length was constructed, running through the counties of Marshall and DeSoto and into what was then Pigeon Roost Creek, and later into Pigeon Roost Drainage Canal.

Appellants owned three hundred and sixty acres of land within the district situated at its upper end and extending about one and three-quarter miles above the head of the canal. His lands are shown to be from fifty to sixty feet higher in elevation than lands four miles below and on the canal.

The original bond issue for construction was $46,000 upon an assessment of total benefits in the amount of $93,516.75. Annual levies have totaled $77,123.26. Unconsumed benefits amounts to $16,393.49. The original bond issue has been fully paid.

Appellee presented for approval and adoption a new assessment roll duly itemized, prepared and certified, providing for the assessment of "new and additional benefits" in the original sum of $93,516.75. It was in all respects similar to the original assessment of benefits preliminary to construction. It was alleged and shown that the lower area of the canal has been obstructed by debris, drifts and silt accumulated during the years, and that a proper maintenance of the district requires further assessment to this end.

The testimony discloses that while the new assessment roll was identical with the former, there had been in-

spection and survey of the lands, verifying both the necessity for such repairs and betterments, and that such repairs were absolutely necessary for its preservation and maintenance. Appellant insists that the adoption of the figures included in the original assessment was an arbitrary device and bore no proper relation to the increased benefits to lands of appellant. Concessions is made only to the probability that lands of appellant may in the future be damaged by a progressive building up of the stoppage. Our conclusions render unnecessary a further examination of the testimony.

 The policy and purpose of our drainage acts is the reclamation of overflowed, non-productive or insanitary lands, and the several districts are organized as legal and administrative entities and, as such, were declared to be a body politic with the right of perpetual succession. Code 1942, Sections 4591, 4609. Each district "shall continue to exist as a body corporate, for the purpose of preserving the system of drainage and keeping the ditch clear from obstruction . . . and for doing such other things and acts in order to carry out the purposes . . . of the drainage system so established, as may be found advantageous to the district." Code 1942, Section 4713.

The crux of our inquiry is whether an additional assessment may be made without regard to the present existence of actual and additional material benefits to a particular integrated tract, when it appears "absolutely necessary in order to raise funds to preserve and maintain the improvements of the district". Code 1942, Section 4689. The exact point has not been squarely faced by us heretofore. Opposing counsel cite the same authorities to support their respective views. These cases will appear in the able briefs to be herewith reported, and we do not turn aside to analyze or construe them. A conclusion that a necessity for preservation and reclamation of the system itself, stands upon a different footing from a mere increase of assessments "because of addi-

tional benefits", would leave most of these decisions without point. We take occasion to state that in none of them is any view expressed inconsistent with our conclusions. Gillis v. Indian Creek Drainage District, 160 Miss. 528, 134 So. 173; and People's Bank Liquidating Corporation et al. v. Beashea Drainage District, 199 Miss. 505, 24 So. (2d) 784, lend definite support thereto.

In this connection, we set out in full the relevant portion of Section 4689: "no new assessment roll shall be required unless in the opinion of the commissioners it becomes necessary to raise the assessment of benefits to such lands because of additional benefits to the lands other than these assessed, or because it becomes absolutely necessary in order to raise funds to preserve and maintain the improvements of the district."

■■ It will not be doubted that in organizing and financing a new district, the theory of proportionate benefits is paramount. Actual resultant benefits are at once the justification for, and limitation of, the assessments. The district is the creature of its members, and in turn the creator of their benefits. Their rights to bind themselves in such common cause is measured by their duty to maintain this political entity, and their original investment. If in their union there is to be found a new strength, so must also there be found strength in the union.

Appellant's dissent is proclaimed from the vantage point of a dry and secure footing, from which elevation he would view dispassionately the calamity which besets his less fortunate partners now mired in the morass to which his waters and the flotsam from his own lands have made contribution. We are challenged with three alternatives. The first is that this beleaguered brethren bear the entire expense of its salvation. The second is that the appellant bear his just proportion of the burden of reclamation. The third is that the district be abandoned, and its investment allowed to founder amid its own quicksands.

Section 4689 authorizes a new assessment roll in two distinct cases: (1) When, because of additional benefits, it becomes necessary to raise the assessment of such benefits; or (2) when it becames necessary to preserve and maintain the improvements theretofore made. In the latter case, there is no mention of ascertainable benefits except such as are implicit in the preservation of that which had been judicially determined to be an asset to the whole district:

 In adopting a construction that it was the policy of the Legislature to justify a proportionate burden among all members of this autonomous body upon the grounds of a common emergency, we may well invoke Section 4641 which recognizes the need for a liberal construction of the entire act to effectuate its ends. Such public policy is further reflected in Section 4609, which provides: ''they (the Commissioners) may make additional assessments from time to time, as necessity may require, to pay for the expense of maintaining, cleaning out, and keeping in repair the ditches of said district and meeting the legal obligations of such district; and the additional assessment for maintaining, cleaning out, and keeping in repair of the ditches of said district and meeting the legal obligations of such district shall be made by the commissioners in the following manner; on or before the first Monday in September of each year the drainage commissioners shall assess on each tract of land, or other property in the district, in proportion to the original and supplemental benefits assessed for construction, such an amount as is necessary to pay the expense of maintaining, cleaning out and keeping in repair the ditches of said district, and meeting the legal obligations of such district and shall certify their assessment to the board of supervisors of the county in which the land lies, and it shall thereupon become and be the duty of the board of supervisors to levy a tax in accordance with such assessment sufficient to meet said expense of maintaining, clearing out, and keeping in repair the

ditches of said district. The said tax levied shall be apportioned to, and levied on each tract of land or other property in said district in proportion to the original and supplemental benefits assessed for construction, and not in excess thereof.''

A maintenance tax in proportion to the original assessments has been recognized by statute in several states. 28 C. J. S., Drains, § 66, p. 426. See Iowa Code 1946, § 455.137; Missouri Rev. St. 1939, Sec. 12535 Mo. R. S. A. When it is considered that our Laws of 1912, Chapter 195, and Laws 1914, Chapter 269, provide that neither shall ''repeal the drainage laws now in force'', it is not difficult to deduce a legislative policy to justify necessary repair as a benefit to each and every member of the district whose individuality has become merged as an exigency of the social order into a community of benefit and of responsibility.

Such policy is fortified by Code 1942, Section 4752, which is as follows: ''All of the provisions of the code chapter on drainage districts which are not contained in this article, and which do not conflict with any of the provisions of this article, shall apply to any districts organized or operating hereunder.''

A conception of the district as a corporate body makes plain the probability of its ultimate decease through functional disorders or an infection in an extremity, be it head or foot; even as a sound alimentary canal will tend to promote its vigor and longevity. A paralyzed member is not merely an affliction to itself, for health is an attribute of the body. The statute forbids not only a crippled existence, but also any impairment by amputation.

We express some concern, however, at the disclosure that although a bond issue for repair has been fixed at $25,000, the new assessment roll contemplates additional assessments in the amount of $93,516.75. We could not approve any procedure whereby the commissioners may be tendered a blank check for future contingencies or

demands. It must be assumed that no levy would be fixed which would create a surplus beyond expenses that are "absolutely necessary to its maintenance and preservation."

In this connection, such resources now available to the district in unexpended funds and otherwise are to be taken into account. The need both authorizes and limits the burden which the petition seeks to impose, and which it has fixed at $25,000, with interest. Such is a condition attached to our affirmance of the decree. Nor are we concerned with the possibility of similar future demands. It will be time enough to deal with these, if and when they should be presented.

Affirmed.

**Smith, J.,** took no part in the decision of this cause.

**Hall, J.,** (specially concurring).

I concur in all that has been said in the controlling opinion and in the concurring opinion, except the apprehension arising out of an assessment for more than is presently needed for the preservation and maintenance of the drainage system of this district, as expressed in the first named opinion. The first assessment in this case was made about twenty years ago, and was for an amount in excess of that which was then needed to construct the drainage system of the district. All of that assessment has not yet been exhausted but the amount now remaining is insufficient to pay for the work now necessary to maintain and preserve the system and consequently another assessment is necessary if the district is to discharge its obligation to preserve the system. It is proposed at this time to use only a little over one-fourth of the additional assessment for those purposes, but the law requires that the system shall be preserved and maintained in future. It is presumed that public officials will discharge their duty in accordance with the law. This

they cannot do in this case unless funds for that purpose are made available. The drainage commissioners are entitled to look to the future just as they did look to the future when the original assessment was made in this district. No levy of taxes is now being made for the entire assessment, and I entertain no apprehension that any additional levy will be made thereon until the time arrives when further funds are needed. If the original assessment is used as a criterion, we may assume that another twenty years will elapse before another assessment is made and during that period taxes may be levied from time to time under the assessment which is challenged on this appeal.

**Montgomery, J.** (specially concurring).

The only question presented in this case is one of statutory construction. It involves the construction of Chapter 195, Laws of 1912 and amendments thereto, now constituting Sections 4674 through 4755, Code of 1942. Our only problem is to determine the legislative intent.

Buchanan owns lands in the upper end of the district, some 60 feet higher than the lands in the lower end. Before the drainage district was organized, neither he nor any group of private landowners had authority in law to accumulate surface waters on his or their own land, or lands, and, by means of a ditch collect and discharge them in volume upon the land of another, without liability for damage. Illinois Central R. Co. v. Miller, 68 Miss. 760, 10 So. 61; Cresson v. Louisville & N. R. Co., 166 Miss. 352, 146 So. 462. Drainage systems, too, are expensive in construction and the cost of construction lies beyond the means of the average individual. So the Legislature, in order to promote agriculture, as well as the public health, enacted the law in question to promote the ditching, drainage and reclamation of wet, swampy and overflowed lands as expressed in Section 4728, Code of 1942.

Under Sections 4683 and 4684, Code of 1942, it is provided that upon organization of a drainage district, the board of commissioners shall prepare plans for the improvement within the district, showing the location, width and depth of the ditches and such other work as embraced within the plan of improvement, and ascertain the cost thereof, and under Section 4688, Code of 1942, they are required to file this plan of improvement with the board of supervisors, accompanied by detailed maps, profiles, and specifications giving the detail and the location of each improvement to be constructed. Section 4689 provides for the assessing of benefits to accrue to each tract of land, by reason of the construction of those particular improvements, as detailed by the plan so filed by them, and none other. The assessment roll is then filed and notice published to the landowner owning lands in the district, advising them that their lands have been assessed for drainage purposes and that the Chancery Court will hear objections to said accessments on the day fixed in the said notice. The Chancery Court, or Chancellor, if the hearing be held in vacation, on the day fixed in the notice, hears the objection and enters its order either confirming said assessment, or increasing or diminishing the same, and the landowner is given 20 days within which to appeal to the Supreme Court.

The foregoing statutory proceedings have been pointed out to show that it is the construction of the particular improvements, as shown on the detailed plan of improvement filed with the board of supervisors, that is the basis for the assesment of benefits and it is all of the benefits flowing to each individual tract of land by the location and construction of those particular improvements but none other that are assessed on the assessment roll.

When this assessment roll has been approved by the Chancery Court or Chancellor in vacation, it is provided by Section 4689, Code of 1942, that the assessment roll "shall stand as a final assessment of benefits upon the lands of said district and no new assessment roll shall be

required unles in the opinion of the commissioners it becomes necessary to raise the assessment of benefits to such lands because of additional benefits to the lands other than those assessed, or because it becomes absolutely necessary in order to raise funds to preserve and maintain the improvements of the district.''

In passing let us note that since the benefits that are assessed are all of the benefits flowing from the construction of the improvements, as shown by the detailed plan on file, and the assessment is fixed by the statute as having the force and effect of a judgment, then this judgment or assessment becomes res adjudicata as to the amount of all the benefits flowing from the construction of the improvements shown by that filed plan and continues as res adjudicata upon any amount to be thereafter assessed, additionally, except in the two instances as specified in the statute: (1) the assessment may be increased by assessing additional benefits other than those assesed, that is to say, flowing from another new plan of improvement. Any benefit, flowing from the old plan and already assessed, could not be, in logic and common sense, an ''additional benefit . . . other than these assessed'' as required by the statute and (2) where there is no new plan of improvement upon which additional benefits other than those already assessed, are received or could be assessed, but where without any new or additional work or benefits ''it becomes absolutely necessary in order to raise funds to preserve and maintain the improvements of the district,'' in which event the commissioners can raise the assessment by authority of the express terms of the statute.

When the notice was published and ran to the landowners, advising them under the statute that their lands had been assessed for drainage purposes and that the court would hear and determine objections to such assessments on the day fixed in the notice, the statute wrote into that notice to each landowner, as fully a part thereof as if expressly written therein, that that assessment so

made against his lands, when approved by the court, would be used as a basis for collection of taxes and when through the levy of taxes against it through the years the amount of benefits assessed had, by the landowner, been paid to the district in the aggregate of his taxes paid, the commissioners had the power, under the express provisions of the statute, to raise the assessment of benefits against all the lands in the district equally and proportionately if it should become absolutely necessary in order to raise funds to preserve and maintain the improvements of the district.

The Legislature recognized the fact that ditches would be constructed by the district and surface water would be collected in its upper reaches and all along its route and discharged through the channel of the ditch so constructed. This collects the water in the upper reaches and brings it down in a body and with greatly accelerated flow through the lands of adjacent owners.

The Legislature also knew and recognized that these ditches from the upper lands to the lower lands, as they leveled out on their lower reaches, would have a tendency to slacken and retard the velocity of the waters traveling through these lower reaches and would have a tendency to fill up with deposits of sand and debris. If such condition should arise the landowner, on the lower reaches, whose lands had been assessed for the purpose of draining his land would find his lands thereby flooded with collected surface waters, collected in a ditch, and released upon his lands in collected quantities and with an accelerated flow, greatly to his damage, thereby enabling his neighbors, through the drainage district to do that which in private capacity they had no legal right to do and leaving him defenseless and without right to claim his damages. Such a result would convert the drainage district into the instrument of his destruction instead of the instrument of his salvation as it was designed and intended to be. So the Legislature established the drainage district as a quasi public corporation,

giving it perpetual existence and by Section 4713, Code 1942, it was provided that "The drainage district shall not cease to exist upon the completion of its drainage system, but shall continue to exist as a body corporate, for the purpose of preserving the system of drainage and keeping the ditch clear from obstruction . . . ".

It costs money to preserve the system of drainage and to keep the ditch clear from obstructions. The drainage district's revenue must come from taxes collected. It cannot levy an ad valorem tax upon the land. The levy must be made against the benefit assessed against the land. If it be the duty of the district, under the statute to perpetually preserve the system of drainage and to perpetually keep the ditch clear of obstructions, then revenue from taxes must come in perpetually with which to pay for this work, and assessments of benefits, out of which such taxes can be collected, must be perpetually maintained, even in districts where no improvements are constructed except those in which there is only the original plan and no other benefits ever accrue except those originally assessed.

The drainage act is a whole and united scheme that is visioned to run from organization in perpetuity. It contemplates not only the construction of the improvements but it equally contemplates their maintenance in perpetuity. Appellant Buchanan would fondly embrace that part of the act that provides for the original construction of the improvements but wholly reject that part that provides for maintenance through perpetuity. He cannot do this. He must take the act as a whole. He has had his day in court on the organization of the district. Through the assessment of benefits against his lands, those lands are tied in and subject to all of the terms of the drainage law. If he is unwilling to be bound by the terms of the drainage covenant his remedy is to sell his lands and move elsewhere.

There is no new construction work contemplated under the proposed bond issue. It is the same work detailed in

the original plan of improvement on which the original assessment of benefits was made. The canal along its lower reaches filled up with logs and debris. It would be much more expensive to go into the old channel of this ditch, now filled with logs and dirt, excavate the dirt from around the logs and then excavate the logs than it would be to dig another channel in good dirt right along beside it. This is not a change of plan, it is merely an adjustment to a construction difficulty and authorized by the drainage act. There is no new plan for new work for which an additional benefit could be assessed. This is the same ditch called for in the original plan of improvement and the benefits flowing from the construction of which have already been assessed by the original assessment of benefits. No additional benefits will flow from the construction of this ditch, which is dug for the purpose of maintaining the original ditch as planned, and hence none can constitutionally be assessed against the lands through which it runs. These benefits flowing from the construction of this ditch have already been assessed and are the same identical benefits already assessed against these lands in the original assessment.

What is contemplated here is exclusively the maintenance and preservation of the improvements in the district. The benefits flowing from the original construction of that improvement were originally assessed at $93,-510.75. The drainage law provides for the maintenance and preservation of those improvements by each landowner in proportion to the benefit received by him by a tax against the benefits assessed against his lands. For purposes of maintenance taxes this proportionn must be maintained. Here the commissioners filed a new assessment roll, for maintenance purposes, finding it absolutely necessary so to do in order to raise funds to preserve and maintain the improvements of the district, as fully authorized by Section 4689, Code of 1942. They preserved the original liability of each land owner in proportion to the benefit assessed against his lands, by assessing

each tract of land in the same identical amount as assessed on the original roll and this was approved by the Chancellor after notice to the landowners, as provided in cases of original assessment. How else could a new assessment roll be made, more accurately preserving the original proportionate liability of each tract of land for maintenance and preservation of the improvements. But it is said it was not necessary to raise the benefits $93,516.75 in order to support the proposed bond issue of $25,000 to clean out the canal. This is true, but it was absolutely necessary to raise the benefits in order to pro-. vide funds for preserving and maintaining the improvements of the district. The district will not cease to exist when this maintenance work is completed but it will go on in perpetuity still charged with preserving and maintaining them. If the district had undertaken to assess only a sufficient amount to pay off $25,000 plus interest plus ten percent for unforeseen contingencies, then it would have had to do so on a percentage level and the issuing of bonds would have wiped out the benefits and have left the district powerless again to do anything by way of preserving the improvements of the district until the benefits should have again been raised. Shall the district raise the benefits each year? There would be just as much reason to require them to act each month or from day to day as expenses arose and the raise in benefits became necessary. I do not so construe the act. No district could function under such a construction of the law. The act contemplates that the work of preserving the improvements shall go on when needed and the benefits shall be taxed to pay for it. If the benefits are exhausted, in the process, they shall be proportionately increased. The landowner does not pay his entire benefit in one year, he merely pays the percentage tax levied against it for that year. The law itself sufficiently safeguards the rights of the landowner by providing that this benefit, assessed against his land for purposes of maintaining the improvements of the district, shall not be

liable to be taxed for any other purpose. The benefit, therefore, will be paid off in taxes only if, when, and to the extent each year that it is absolutely necessary for preserving the improvements in the district. This measures the right and the extent of the right of the commissioners in levying the annual tax. Any abuse of that right will be restrained by the courts.

In my humble opinion the decree of the lower court was manifestly correct and should be affirmed.

**McGehee, C. J.** (dissenting).

The Red Banks Creek Drainage District was organized in 1926 under the statutes mentioned in the majority opinion herein. Soon thereafter the landowners in the district were assessed with total benefits amounting to the sum of $93,516.75. The appellant, George M. Buchanan, then owned, and still owns, 360 acres of land in the district, and 312 acres thereof were then designated "overflowed lands", and the assessment of benefits originally made against his lands was the sum of $9,360, being approximately one-tenth of the total benefits assessed on all of the lands of the district. He had paid approximately 82½% of these assessed benefits under annual tax levies made to pay the cost of the drainage canal, approximately 11 miles in length, which passes through his lands that are located near the head of such canal.

Beginning at a distance of approximately 4½ miles below the appellant's land, the original canal has been completely filled up and obliterated from that point to its original terminus, but the lands of the said appellant are well drained by the upper and remaining portion of the canal and none of them are now subject to overflow.

The appellant recognizes his liability for the payment of the remainder of the $9,360 originally assessed against his lands if the payment thereof should be needed to preserve and maintain the improvements of the district, and

also recognizes that he would be liable for any additional benefits that may be assessed on a new assessment roll against his land for such purpose, provided there should be any additional benefits to accrue to his lands under the supposed new assessment roll than those which accrued to him and were paid for under the original assessment; but of course he challenges the right of the commissioners to now assess his lands with additional benefits in the sum of $9,360, where it is shown that no additional benefits will accrue to him on account thereof.

It was clearly shown on the hearing of the objection to the so-called new assessment roll when the same was submitted by the drainage commissioners to the trial court for approval that it is only a remote possibility that any additional benefit will ever accrue to the lands of the apellant by reason of the construction of the proposed diversion canal in the lower end of the district where there are no longer any improvements to be preserved and maintained. The three commissioners and the engineers of the district were frank to testify only that unless the contemplated diversion canal should be constructed in the lower end of the district from the proceeds of the $25,000 proposed bond issue for that purpose, the canal above where the new construction is to begin may fill up in a few years to where it would impede the efficient drainage of the appellant's lands, although it is conceded that there is a fall of from 40 to 60 feet from the elevation of his lands to the point of the proposed new construction.

Notwithstanding the undisputed proof on the above mentioned issue, the commissioners, whose lands are all located in the lower end, or overflowed part, of the district, assumed to go upon the lands and then report to the court their finding that additional benefits would accrue to the several tracts of lands in the district to the same extent as under the original assessment of benefits in the sum of $93,516.75, and that the appellant should be assessed for additional benefits in the same amount of

his original assessment in the sum of $9,360. The trial court accordingly approved and confirmed this reinstatement of the original assessment roll, and found as a fact without probative evidence in that behalf that such additional benefits would accrue to this objector on a supposed new assessment roll, and as being authorized by the last paragraph of Section 4689, Code 1942, which reads as follows:

"The assessment roll (of the benefits originally assessed) so prepared and filed by the commissioners, when approved by the chancery court or chancellor in vacation, shall stand as a final assessment of benefits upon the lands of the said district and no new assessment roll shall be required *unless in the opinion of the commissioners it becomes necessary to raise the assessment of benefits to such lands because of additional benefits to the lands other than these assessed, or because it becomes absolutely necessary in order to raise funds to preserve and maintain the improvements of the district.*" (Italics mine.)

In my opinion, the foregoing provision of the statute clearly means that if either of the two contingencies set forth in the italicized part thereof do exist in the opinion of the commissioners then, and in such event, a new assessment roll shall be required; and that the same shall be based upon the same considerations on which the original assessment roll was founded; that is to say, upon the proportionate benefits accruing to each respective landowner.

This being true, the action of the commissioners in the instant case in reinstating the original total benefits assessed of $93,516.75 on all of the property of the district against which to levy taxes to defray the cost of the proposed construction of the diversion canal in the sum of $25,000, does not amount to a new assessment roll as contemplated by the said statute; and neither could such an exorbitant assessment have reasonably been deemed "absolutely necessary in order to raise funds (in the sum

of $25,000) to preserve and maintain the improvements of the district.'' No decision is cited in any of the briefs of counsel that would tend to sanction such an excessive assessment of benefits against the landowners, under which the commissioners would be allowed by the authority of our previous decisions in the cases of Anderson v. McKee, 182 Miss. 156, 179 So. 858, People's Bank Liquidating Corporation et al. v. Breshea Drainage District, 199 Miss. 505, 24 So. (2d) 784, to issue certificates of indebtedness or bonds until the amount of this additional assessment of benefits shall have been fully consumed.

It is to be assumed that if we should affirm the decree appealed from herein, the supposed new assessment roll, as approved by the chancellor, would stand as a final additional assessment of benefits upon the lands of the district to the same extent as the original assessment became final when approved by the chancellor in 1926, and that the appellee, as objector to the proposed additional assessment against his lands will be deemed to have had his day in court and to be forever bound by such additional assessment until he shall have fully paid the same, if in the opinion of the commissioners it should become necessary to make levies against such assessment until the full benefits assessed shall have been paid for the purpoe of enabling the commissioners to take such steps as they may deem necessary in order to raise funds to preserve and maintain the improvements of the district, and this without regard to whether or not the work now proposed to be done or any future undertaking would cause any additional benefits to accrue to his land.

The decree appealed from is unconditional, that is to say, it does not undertake to limit the commissioners to the collection of $25,000 against the $93,516.75 of new benefits assessed. The affirmance of this decree would authorize the commissioners under Section 4695, Code 1942, to collect the estimated cost of the proposed improvement, with not less than 10% added for unforeseen

contingencies, and to be paid in annual installments not to exceed 10%, in any one year, of the $9,360 assessed against the lands of the appellant. Section 4696, Code 1942, would authorize the commissioners to make an annual tax levy, in an amount not exceeding the installment of assessment levied for that year; Section 4701, Code 1942, provides that if the tax levied shall prove insufficient, the board of supervisors shall make another levy, from year to year, until the improvement is completed, but not to exceed the value of the benefits assessed against the land; Section 4704, Code 1942, would authorize the commissioners to borrow money and issue bonds therefor "not exceeding in amount the total amount of benefits assessed against all the real property in the district"; Section 4712, Code 1942, would authorize the commissioners to construct ditches outside of the district to obtain a proper outlet for the drainage system, and to condemn and pay for rights of way for such purpose; and Section 4718, Code 1942, provides that all bonds and evidences of indebtedness issued by the commissioners are to be secured by a lien on all of the lands, in an amount not to exceed the amount of benefits assessed against them, and requires the commissioners to see to it that an assessment is levied annually and collected for the payment of any bonds issued, or obligations contracted for, under their authority, and the making or levying of said assessment may be enforced by a mandamus at the instance of any person interested.

In other words, even though the theory of mutual obligation and responsibility on the part of the landowners of a drainage district to see to it that each individual landowner is provided with permanently efficient drainage may appear to be plausible on its face, there is nevertheless encountered the constitutional objection that the commissioners would be without authority to fix a lien of $9,360 against the land of the appellee, and to enforce the satisfaction of such lien, or any part thereof, where no benefit is to accrue to him in return therefor. May

he be thus deprived of his property, without violating due process of law?

In the case of People ex rel. Mann v. Allen, 330 Ill. 433, 161 N. E. 867, 871, there was involved an assessment of additional benefits for an improvement in an already existing drainage district. There were objections to the assessment upon the ground (1) that there would be no additional benefits accruing to the land of the objectors; and (2) that the additional assessment would exceed the contemplated additional benefits to accrue to the district. The Illinois Court made the following announcement: "The objectors . . . were benefited by the first improvement, because the ditches were dug in such a way as to facilitate the drainage of their lands through the natural water courses to the swale at the lower end of the ditch. The present proceeding is to drain the low, wet lands, which would benefit only the landowners in the south portion of the district, and those not benefited cannot be assessed to pay for the improvement."

The precise question involved in the case now before us has never been specifically dealt with by this Court. However, the principle above announced by the Illinois Court is implicit in the clear recognition by this Court in its opinions in the cases of White et al. v. Lake Cormorant Drainage District, 130 Miss. 351, 94 So. 235; the two Gillis cases, Gillis v. Indian Creek Drainage District, 155 Miss. 160, 124 So. 262, and 160 Miss. 528, 134 So. 173; Anderson v. Robins, 161 Miss. 604, 137 So. 476; Anderson v. McKee, 182 Miss. 156, 179 So. 858; and People's Bank Liquidating Corporation v. Beashea Drainage District, supra, that an assessment of additional benefits to the landowners in a drainage district are to be based upon the proportionate benefits that are to actually accrue to each particular tract of land involved on a new assessment roll. For instance, in the White case, supra, it is recognized that since the lands of certain landowners in the district did not receive any additional benefits on account of the new assessment, it was proper for the

trial court to release such lands from the new assessment. On the first appeal of the Gillis case [155 Miss. 160, 124 So. 264], it was held that the drainage commissioners were without authority to assess especially designated lands with additional benefits and fail to make such an assessment of additional benefits "against other property receiving benefits." The two Gillis cases involved an additional assessment to preserve and maintain the improvements of the district, and the construction given by the Court to the last paragraph of Section 4689, Code 1942, here involved, is not that all of the lands in the district, without regard to the accrual of additional benefits, must be assessed; but, on the contrary, that the assessment of additional benefits must follow the finding of benefits to be conferred upon the land by the work proposed. And, in the case of Anderson v. McKee, supra [182 Miss. 156, 179 So. 859], the Court said: "It was held in the case of Anderson v. Robins, 161 Miss. 604, 137 So. 476, 478, that 'the Legislature had full power, under the Constitution, to authorize drainage districts to contract debts prior to the assessment of benefits from the proposed drainage scheme to the land of the district, *provided liability therefor is not imposed on the land or its owners, in excess* of the benefits accruing to the land.' It follows from this that the Legislature could authorize drainage districts to contract debts subsequent to the assessment of benefits, *provided liability therefor is not imposed on the land or its owners in excess of the benefits accruing to the land.*" (Italics mine.)

In the case of Simmons v. Hopson's Bayou Drainage District, 112 Miss. 200, 72 So. 901, 902, the drainage commissioners "made a new assessment upon the lands of the drainage district, under chapter 196, §§ 1698 and 1700, Acts of 1912, and ordered the issuance of additional bonds of the drainage district . . . for new drainage work necessary in cleaning, enlarging, and repairing the drainage system of the district, and in paying a balance due for work already done thereon." The precise con-

tention made is not stated in the opinion, but the language of the Court in this decision construing the statute for assessing additional benefits for the preservation of the drainage system, and for paying a balance due for work already done, is in the following words: "As to the third assignment of error, we see no merit in whatever, as the act itself . . . expressly provides that the commissioners may do exactly what they did do—make the new assessment of the benefits to be derived by *each seperate tract of land,* and raise revenue therefrom according to the provisions of the law." (Italics mine.)

I don't think that the Court, by an opinion in the present suit, can fully safeguard the rights of appellant in regard to this exorbitant assessment against his lands as against future attempts to collect the additional $9,360, or a greater part thereof, for additional work or construction from time to time, without regard to benefits to accrue to him, since, under Section 4689, Code 1942, the additional assessment, in my opinion, if affirmed by us, would "stand as a final assessment of benefits upon the lands of the . . . district", and the right of the commissioners to issue certificates of indebtedness or bonds would be fixed by the several statutes hereinbefore referred to, and by the decisions of this Court in the cases of Anderson v. McKee and People's Bank Liquidating Corporation et al. v. Beashea Drainage District, supra, unless the said decisions should be overruled and unless we construe the several other statutes to have a different meaning than that which their language would indicate.

Therefore, it is my judgment that in any event it is proper to reverse the cause for a bona fide assessment of the additional benefits that may accrue to each respective tract of land, if any, and that under the present record there was no authority for the assessment of any additional benefits against the appellant since it was not shown that any additional benefits will accrue to his lands, except that there is a mere remote possibility that they would accrue at some time within the next few years,

and it is well-settled that judgments and decrees are to be based upon reasonable probabilities and not mere remote possibilities.

**Roberds, J.,** concurs in this opinion.