MOORHEAD DRAINAGE DIST., SUNFLOWER COUNTY v. JACKSON et al.

In Banc. March 13, 1950.

No. 37620 (45 So. (2d) 234)

**B. B.** and **R. M. Allen,** for appellant.

**Neill, Clark & Townsend,** for appellees.

**F. M. Featherstone,** for appellees, Featherstone, Fitts and Downer.

**Smith, J.**

This District has heretofore been before the Supreme Court, Hobbs et al. v. Moorhead Drainage District, 205 Miss. 679, 39 So. (2d) 307. The cause was reversed and remanded so that necessary interested persons might be made parties, and the merits of the petition thereupon heard. This decision was handed down March 14, 1949. After remand, the commissioners for an approval of the new assessment of benefits and levy of taxes filed the present petition on August 23, 1949, and the chancellor endorsed theron a fiat addressed to the clerk directing that notice be given to ''owners of the lands and property within the Moorhead Drainage District, who desire to resist said levy and assessment, to appear before the undersigned Chancellor, in vacation, at my office in the Courthouse in the City of Indianola, Sunflower County, Mississippi, at 10 o'clock A. M., on the 12th day of September, 1949, not less than ten days after the last inser-

tion of said notice, and urge his, or their objections, if any they have in this cause, to the approval of said assessment roll and said levy, or else said assessment and levy will be final.''

The petition averred that certain rehabilitation work in the district was imperative and that the total newly assessed benefits and betterments against the lands and property of said district ''amount in the aggregate to $154,318.83, and that it will cost $50,000.00 to clean out said canals, drains, ditches and outlets of the district, and restore them to the condition they were in when the district was constructed, and that it will be necessary to do additional work, as shown by the plans and specifications now on file in this cause . . .''. The prayer was for approval of the assessment, maps, plans and specifications for doing the work, and authority for the commissions to issue and sell $50,000.00 of new bonds of the district, in order to raise funds for defraying the cost of the proposed restorative work.

The Moorhead Drainage District, it seems, was originally organized under Chapter 195, Laws 1912, and its system of drainage then set up accordingly; that all bonds at that time issued, together with interest coupons thereon, had long since been paid; and that the drainage of the district had become inefficient to effectually drain the lands because clogged and filled with dirt, debris, and plant growth. It was, therefore, a case involving a reactivation of the system, and restoration of efficiency, which required an entirely new assessment of betterments and levy thereon to raise the funds to defray the expenses of the proposed improvements of conditions at the time of the filing of the original bill in this case. All parties seem to have agreed that much work was needed to accomplish this purpose, but there was also considerable disagreement as to plans, their sufficiency, and whether or not such purpose could be accomplished for $50,000.00.

At the· date set by the clerk in compliance with the chancellor's fiat, three written protests were filed by owners of land in Section 36, Township 19, Range 3 west, in which was ditch No. 6, to-wit: R. W. Featherstone, Miss Ara Belle Fitts, and T. G. Downer. The gravamen of these objections was that ditch No. 6 was and had always been, a liability instead of an asset, and the protestants would receive no additional benefits under the proposed rehabilitation of the drainage. All three asked that their lands be withdrawn from the district.

However, on September 12, 1948, the chancellor was too ill to be present pursuant to the notice, and, in consequence, on his own motion an order was entered resetting the cause to be heard at the same place, at 10 o'clock A. M., September 29, 1949. On the day before the hearing certain other landowners in the district filed further objections, in which the aforesaid Featherstone, Fitts and Downer also joined, along with many others. The complaint of these landowners was that the plans and specifications were too vague; showed no amount of yardage to be removed; and gave no adequate idea of the particular work to be done. The charge was also made that $50,000.00 was insufficient to defray the cost of the work proposed; and that Moorhead Bayou should be drained first. Finally, their objections included one to the effect that no assessment of benefits or bond issue should be approved without a revision of the plans and specifications, demonstrating that there was provided expenditure of a sufficient amount for cleaning out and draining Moorhead Bayou properly, and no work should be done in the district without such revision. These objections were filed by W. L. Jackson, a former commissioner, and many others.

On the date reset for the hearing, appellants filed a motion to strike the objections of W. L. Jackson, et al., claiming they had been filed too late. This motion was denied. However, the matter became moot when the chancellor later overruled the objections themselves,

after hearing evidence on both sides of the issues raised. The protestants have taken no cross-appeal, and, therefore, the action of the chancellor in that regard is not before us for review.

It seems useful, nevertheless, to call attention to the fact that on the Jackson objections both sides offered evidence of a highly conflicting nature, submitting all phases of the respective contentions to the chancellor, so he was fully informed in the premises, and we cannot say he was manifestly wrong in his decision upon the facts in such evidence. However, appellant assigns as error the hearing of witnesses on the questions raised on the protest, on the ground that if such objections had been stricken, the chancellor would have granted their petition in routine, instead of entering an objectionable decree out of harmony therewith, based on the evidence adduced on the objections and the motion to strike. We seriously doubt that the chancellor would have granted the prayer of the petition without inquiry or examination of the proposal by the aid of testimony, and hence cannot adopt the assumption of appellant. The object of confiding drainage districts to the chancery court is to assure correct and careful administration of the affairs of the district by the commissioners as agents of the chancellor, who also bear, so to speak, a fiduciary relationship to all of the landowners in the district. It cannot be sustained in justice or reason, we think, that the chancellor erred in hearing this proof, on which, moreover, he ruled in appellant's favor by overruling the objections, as to which the evidence was introduced.

On the other hand, the chancellor sustained the objections of Featherstone, Fitts and Downer, and granted their prayer to let their lands out of the district. He was without such authority. Section 4679, Code 1942, provides that the order creating the district shall have the force of a judgment, and that if no appeal be taken, as provided in the statute, such judgment shall be deemed conclusive and binding upon all real property within the

boundaries of the district. The very statute, Section 4713, Code 1942, by virtue of which appellants filed their petition provides that the drainage district shall not cease to exist upon the completion of its drainage system, but shall continue to exist as a body corporate, for the purpose of preserving the system of drainage and keeping "the ditch clear from obstruction and of extending, widening or deepening the ditches, from time to time, and for doing such other things and acts in order to carry out the purposes of this article and of the drainage system so established, as may be found advantageous to the district." Section 4609, Code 1942, is to the effect that "The commissioners may, after the organization of said district, do any and all acts that may be necessary in and about the surveying, laying out, constructing and repairing, altering, enlarging, cleaning, protecting and maintaining any drain or ditch or other work for which they have been appointed; and they and their successors shall have charge of said ditch in perpetuity, . . . ". There is no statute providing for the release of lands from the district after the final judgment establishing it.

Featherstone, Fitts and Downer cite the case of White et al. v. Lake Cormorant Drainage District, 130 Miss. 351, 94 So. 235. There were two issues there involved: "One is whether the court erred in holding that the statute (Chapter 195, Laws 1912) under which said drainage district was organized authorizes a second assessment of benefits; the other, whether the court erred in releasing from such assessment of benefits certain landowners of the district." The lower court was sustained on both questions,—it answered in the affirmative. On the second issue, the court's ruling thereon—the basis for the argument of Featherstone, et al. that the chancellor in the case at bar properly excluded their lands from the district,—we said "They knew that under the law the court on the hearing had authority, if the evidence justified it, to make changes in the assessments, to in-

crease or decrease such assessments, or release lands entirely therefrom." The word "therefrom" manifestly refers to assessments and not to the district, so this case does not justify the chancellor's decree eliminating their lands from the district.

Obviously, the relief sought was from the new assessment of benefits on the theory that the Featherstone, Fitts and Downer lands would not be benefited by the rehabilitation of the 1912 drainage system, but their prayer went too far, and the court went too far in granting it. He could have, and we believe, should have, released their lands from the new assessment and levy, under the evidence. As stated, their lands were in Section 36, and involved drainage ditch No. 6, which had been, to all intents and purposes, abandoned many years before the petition here was filed, and was not then, and had never been, functioning in any beneficial way. In fact, there was proof that, in addition to other growths, there were trees, in its bed, twelve to eighteen inches in diameter. We construe the chancellor's holding as also releasing the commissioners from clearing out and maintaining ditch No. 6, and we affirm such holding.

The trial court sustained the objector's motion to strike the report of the district's engineer as to the proposed work in the district, and that is assigned as error. Section 4684, Code 1942, deals with what plans and specifications must show. At the trial, an engineer by the name of Pedigo, testified that the report of the district's engineer, Kelly, was indefinite as to plans, and contained no specifications. When interrogated by the chancellor on the subject, Kelly himself denominated the document as merely a "preliminary report." Thereupon, it was stricken from the case. Certainly, before a contract can be made, and before bonds should be authorized, there must be plans and specifications to define and delineate the work to be done, and to demonstrate that the proposed bond issue is adequate. It appears that the

original 1912 plans and specifications had been lost. ██ ██ The "preliminary report" was inadequate, but it was of some aid in the consideration of the matter before the court, and hence should not have been excluded although it should not have been accepted as entirely in lieu of proper plans and specifications, which may yet be filed. We do not, therefore, find its striking to be reversible error, but do hold that it will not take the place of necessary plans and specifications, especially since the final decree makes frequent reference to plans and specifications, which apparently has reference to those of 1912, but which were not available at the trial of the case.

At the conclusion of the evidence and argument, the chancellor made this remark, at the same time incorporating a query to the attorney for the district: "Now the whole proof shows that the work to be done is based on the theory that this present work must restore the District to its original position when created,—isn't that true, Mr. Allen?" Mr. Allen answered, "That is right." It is argued here that since the court overruled the objections of Mr. Jackson and his fellow-objectors, the entire proposal of the district was necessarily approved, especially in view of the fact that the petition in addition to seeking to restore the drainage system to its condition when created, also averred that it would be necessary to do additional work according to the plans and specifications on file. This refers to the preliminary report of the engineer of the district which we have discussed, supra. In this connection, the complaint is made by appellant that the decree prepared by it was altered by the chancellor so as to make further procedure impossible, contradictory and inconsistent, on the theory that no contractors would be willing to undertake the work, and the bonds could not be sold, because of the nature of the final decree.

It approved the assessment rolls, except as to Featherstone, Fitts and Downer; approved the work proposed to be done by the commissioners, "so as to restore them

to their condition when constructed"; and also "the doing of such other acts and things as are necessary to carry out the purpose of the creation, operation and maintenance of said district"; approved the issuance of $50,000 in bonds for such purpose; overruled the Jackson, et al. objections; approved, ratified and affirmed the plans of the commissioners, adding that when they shall have let a contract or contracts to responsible bidder or bidders to restore the drainage system to its original condition, and contractors had qualified as required by law, the bonds of the district were authorized to be issued; ratified all things done by the commissioners, except the assessment of benefits to the Featherstone, Fitts and Downer lands; and decreed other matters not germane to decision in the case here.

The commissioners, appellants here, charging that they were not granted all of the relief to which they were entitled but were also required to do impossible things by the final decree, filed a written motion to "correct decree", in reality meaning to reform it to conform to their views of what it should have been. They objected strenuously to this paragraph therein, permitted to be inserted by the chancellor at the instance of appellees: "Fourth.—That the application of the Commissioners to do the work set out in said petition, according to said plans and specifications, and the proof adduced on the hearing of said petition, is hereby ratified, authorized, and confirmed, and when said commissioners shall have let a contract or contracts to some responsible bidder or bidders to restore Moorhead Bayou, and all canals of said Moorhead Drainage District to the same depth, width, and condition that the same were in on completion of the original construction work had in said Drainage District on construction of same, and when said responsible bidder or bidders shall have entered into a contract or contracts to perform said work that said commissioners be, and they are hereby, authorized to issue and sell the

bonds or evidences of indebtedness of said Moorhead Drainage District, in the sum of fifty thousand dollars.'' It was urged that ''the same was a mistake, miscalculation and misrecital of the quantity of work to be done under said decree, . . .''. In addition, the commissioners averred that although the lands of Featherstone, Fitts and Downer had been let out of the district, ditch No. 6 would nevertheless still have to be cleaned out and maintained under said clause No. 4. It was further charged that the decree required the cleaning out and maintaining of certain ditches and drains not contemplated to be so treated in their petition, which constituted a patent mistake and inadvertence. It was, therefore, prayed that the final decree be amended ''to speak the true intent and purpose of the chancellor, . . .''.

Overruling this motion, the chancellor called attention to this part of the final decree as prepared by counsel for the commissioners, and not deleted therefrom: ''For the purpose of preserving the system of drainage in said drainage district, and cleaning out the ditches, canals, drains and bayous therein, so as to restore them to their condition when constructed.'' He also cited the section of the final decree, prepared by appellant's counsel, to the same effect; as well as the chancellor's question to the counsel of appellants, and his answer, supra, just before the decree was presented for signature. The court, therefore, found there was no error, inadvertence, mistake, miscalculation, or misrecital of the quantity of work to be done in the district, as charged in the motion, which was overruled. It was further stated in the decree overruling the motion, supra, that the specific decree discharging the lands of Featherstone, Fitts and Downer from the district operated to exclude from the system to be restored, ditch No. 6 or any other ditch or ditches which penetrated into or through their lands.

As is not unusual in cases appealed to this Court, in the briefs here submitted there are many bypaths diverging

from the high road of pertinent and controlling issues, and if we wandered off into them we would become lost in a wilderness of useless discussion. This is not said in any way as a reflection upon the able and energetic counsel representing both sides of this controversy, but only in explanation of our refusal to prolong this necessarily extended opinion by discussing matters not necessary to decision on important issues before us.

We have concluded that the decrees of the chancery court should be approved generally, but specifically modified in some particulars, which, while technically a partial reversal of the learned chancellor, do not require, we think, a remand of the case, it being our duty here to enter such decree as the chancellor should have granted.

1. We must disagree with the specific decree of the chancellor insofar as it releases the lands of Featherstone, Fitts and Downer from the boundaries of the district, but under the facts and circumstances in the record as to ditch No. 6, penetrating their lands in Section 36, we construe the action of the chancellor as tantamount to releasing them from the assessment of benefits and the levy of taxes thereon in the proceeding before us, but ineffectual to discharge them from the boundaries of the district, and with that view, we modify and limit the relief granted them accordingly. We do not see that the cases of Gillis v. Indian Creek Drainage District of Panola, Quitman and Tunica Counties, 160 Miss. 528, 134 So. 173, or Buchanan v. Red Banks Creek Drainage District, 205 Miss. 736, 39 So. (2d) 321, not yet reported in State Reports, conflict with our conclusion in the instant case.

2. It is not necessary to decide whether or not the chancellor erred in permitting the filing of the objections by Jackson, et al., after September 12, 1949, the date first set by him, but which were filed before the second date set, or erred in overruling the motion to strike the same,

since those questions became moot when the objections themselves were overruled. However, we affirm his action in hearing the evidence thereon, and taking the same into consideration in the final decree.

3. We are of the opinion that it was error to strike the so-called plans and specifications prepared for the commission by their engineer, styled by himself as only a preliminary report, but not a reversible one. It should have been retained for whatever it might be worth. We cannot see that the district's cause was harmed by its exclusion. In any event, it could not be treated as a substitute for the plans and specifications contemplated by law and required by correct business usage. Our holding here is without prejudice to the filing of plans and specifications in harmony with the final decree, when a contract is sought to be made for performance of the work necessary to be done as required thereby, to be approved by the chancellor.

4. As to the provision of the final decree providing that no bonds be issued until a contract to perform the new work shall have been executed according to law, we feel that in principle it is correct, but needs some relaxation. It is, of course, understandable that the commissioners would hesitate to let a contract without assurance that the district's bonds would find a purchaser, and they thereby obtain the funds to pay for the work. It is also understandable that this would also be a reasonable matter of concern to any contractor interested in submitting bids for the undertaking. It is, further, reasonable to see that a prospective bond purchaser would be reluctant to buy the bonds without justifiable confidence that the work would be done, and taxes collected to repay the principal and interest of their investment. We have, therefore, concluded to relax this provision to the extent that the commissioners may, in their discretion, negotiate a contract or contracts, if possible, after filing and receiving approval of further plans and specifica-

tions, and submit the same to the chancellor, to be approved or disapproved by him, as the case may be, subject to the ability to sell the bonds. Or, if it be not possible to secure such a contract, on proof by competent evidence of that fact, that the chancellor make such further or other provision, in his discretion, as will overcome such obstacle, within the purview of the law.

5. As modified by the foregoing alterations, we affirm the chancellor's final decree, and his overruling the motion to amend it. The matter of bringing into the district many additional acres, under the statute, is not before us, since it seems that prayer was granted by the chancellor, without objection, and there was no appeal therefrom. These lands were subject to such assessment of benefits, after having been brought into the district, as were right and proper, which the original bill states was done.

The decrees of the chancery court are, therefore, affirmed as modified.

Affirmed, as modified.